# EXHIBIT 3
# Part 1 of 2

Name   VONDELL L. LEWIS

Address   P.O. BOX 689/GW-307

Soledad, CA   93960-0689

CDC or ID Number   #E-95977

## CALIFORNIA COURT OF APPEAL SECOND

## APPELLATE DISTRICT; DIVSION ONE
*(Court)*

| | |
|---|---|
| VONDELL L. LEWIS<br>Petitioner<br>vs.<br>BEN CURRY, WARDEN (A)<br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>No. _____<br>*(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

This petition concerns:

- [ ] A conviction          [XX] Parole

- [ ] A sentence            [XX] Credits

- [ ] Jail or prison conditions   [ ] Prison discipline

- [ ] Other (specify): _____

1. Your name:  VONDELL L. LEWIS

2. Where are you incarcerated?  SOLEDAD STATE PRISON C.T.F. (CENTRAL)

3. Why are you in custody?  [X] Criminal Conviction  [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   SECOND DEGREE MURDER, WTIH GUN ALLEGATION.

   b. Penal or other code sections:  187(a); §12022.5(a).

   c. Name and location of sentencing or committing court:  Los Angeles Superior Court; Long Beach, South Section; 415 W. Ocean Blvd, Long Beach, CA 90802.

   d. Case number:  NA004741

   e. Date convicted or committed:  April 1, 1991

   f. Date sentenced:  May 6, 1991

   g. Length of sentence:  15 years to life, plus 5 years enhancement.

   h. When do you expect to be released?  Indeterminate release date

   i. Were you represented by counsel in the trial court?  [XX] Yes.  [ ] No:  If yes, state the attorney's name and address:

   Kenneth T. Welch, 635 W. Foothill Blvd; Monrovia, CA 91016-2038

4. What was the LAST plea you entered? (check one).

   [X] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF
Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

THE BOARD OF PAROLE HEARINGS KNOWINGLY RELIED ON FALSE INFORMATION TO
DENY PETITIONER PAROLE VIOLATING STATE AND FEDERAL DUE PROCESS OF LAW,
BY FAILING TO CONSIDER THAT THE FACTS BEING RELIED ON BY THE STATE TO
ESTABLISH THE COMMITTING OFFENSE WERE FALSE. P.C. §1473(b); U.S.C.A. 14.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

On May 5, 2006, petitioner appeared before a panel of the Board of
Parole Hearings (BPH). Petitioner represented himself at this parole
hearing. On page 7, of the hearing transcript (hereafter H.T.), this
petitioner submitted duly certified court transcripts of a probable
cause hearing and trial transcripts, of the testimony of Detective
Josephson and witness Edna Gonzales, also petitioner presented the
pre-trial minute orders of the proceedings in the Superior Court,
pursuant to California Code of Regulations (CCR) Title 15, Section
2249. The Panel assured petitioner that the documents would be part
of the evidence they considered. (See H.T. 7-11). Petitioner opted to
speak in his own behalf and the presiding commissioner swore this
petitioner in. (H.T. 11). Petitioner denied the accuracy of the facts
as they were recited by the presiding commissioner. (H.T. 12) CON'T

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Penal Code §1473 (b) (1), §3041 (b), §872 (b); In re Scott, 133 Cal.
App.4th 573, 590-591, 603 (2005); In re De Luna, 126 Cal.App.4th 585,
593-598 (2005) In re Dannenberg, 34 Cal.4th 1061, 1095-96 (2005);
In re Smith, 114 Cal.App.4th 343, 366-67 (2003); ADDITIONAL PAGE SEE!

CONTINUE QUESTION (6) SUPPORTING FACTS (a):    GROUND ONE:

1   The Presiding Commissioner, then sought to rebuild the facts,

2   and petitioner complied with that suggestion. (H.T. 12-23).

3   The Presiding Commissioner then moved on to this petitioner's

4   criminal history, as reported by the Bureau of Criminal histroy.

5   (H.T. 24-30).

6   The Presiding Commissioner, then sought to discuss petitioners

7   upbringing and family history, along with petitioner's admitted

8   substance abuse, schooling, lost of college scholarship, sports

9   participation, petitioner being shot. (H.T. 31-41).

10  The Presiding Commissioner then discussed petitioner's letters

11  of support and potential job offers from family members. (H.T.

12  41-46).

13  The Presiding Commissioner, acknowledged that the legal notice

14  under Penal Code §3042 had been sent out without any respones,

15  save the representative from the Los Angeles County District

16  Attorney's office that was present at the hearing. (H.T. 46).

17  The Chair passed the panel to the Deputy Commissioner, which

18  discussed petitioner's post-conviction progess. (H.T. 47). The

19  deputy commissioner discussed all the positive progess that this

20  petitioner has made since imprisonment in remaining disciplinary

21  free, participating in vocational welding, becoming a lead cook,

22  participating in the P.I.A. Bakery, help rebuild the oven while

23  working as a baker, participating in drug self help programs,

24  (i.e.) NA and AA, petitioner's motivation and life's experiences

25  in discovering himself good and bad, petitioner's support of

26  the system and good participating chrono's. (H.T. 47-56).

27  The Deputy Commissioner, read verbatim the psych. report of

28  Dr. Macomber, which makes false statements about the facts, that

QUESTION (6) i.

CONTINUE QUESTION (6) SUPPORTING FACTS (a): GROUND ONE:

1    petitioner had objected to before the hearing on May 4, 2006,

2    but the panel knowingly used the report during the hearing. The

3    deputy commissioner read verbatim specifically, "...prior psych-

4    ologists noted the troubling fact of this case was that Mr.

5    Lewis has been convicted of this murder and manslaughter once in

6    the past. The sequence of violence-- while outside the average

7    for population on the outside of prison. Since past behavior is

8    a strong predictor of future behavior, this fact must be consi-

9    dered. Also quite troubling in this case is the fact that he's

10   strongly denying his responsibility for the victim's death in

11   commitment offense. this is in spite of the fact that there were

12   (several witnesses) that observed him shoot the victim with a

13   gun and testified to the detective to that fact." (H.T. 57).

14   The foregoing statements are false and there is no evidence

15   to support these statements in the record that is reliable. The

16   panel relied on the assessment of dangerousness contained in the

17   psychologist report, without pointing out the false statements

18   regarding the numbers of witnesses and the conclusions based

19   upon that assumption of dangerousness. *(See App. "1".)*

20   Petitioner has no significant mental or emotional problems,

21   but the very serious criminal history as reflected in the score

22   under Section "B" of the psychological report. (See psych.

23   report attached as Exhibit "A".) This report make false and

24   unfounded statements in section "B", that is the focus of this

25   claimed ground for relief. No where can the Board justify or

26   show that several witnesses observed petitioner with a gun and

27   that these imaginary witnesses saw petitioner shoot the victim

28   and testified to what detective about these alleged facts.

QUESTION (6) ii.

CONTINUE QUESTION (6) SUPPORTING FACTS (a): GROUND ONE:

1   Petitioner on April 24, 2006, filed an administrative Appeal

2   (602) Form about the false statements made by Dr. Macomber, in

3   regards to his asessment of dangerousness, on page (3) of his

4   report. (See Exhibit "_A_"). This petitioner gave the Board prior

5   notice of the false statements made by Dr. Macomber on May 4,

6   2006, during a pre-Board meeting with the Panel. (H.T. 2-3).

7       Petitioner openly admitted his character defects during the

8   psych. evaluation and to the Board panel member, but what stands

9   out is that there is no evidence currently to support a threat

10  to the public. Both the psych. report and conclusions only can

11  recite unchanging factors as their reasons, some of which are

12  false, some are no longer applicable because of the self-help

13  and maturity of petitioner, that the psych. report fails to

14  mention are address. No where does the psych. report address

15  the continued self-help programs and other benefits that this

16  petitioner has consistently maintained as progress, throughout

17  the pass (16) years as evidence of changed behavior. Because

18  the Doctors conclusions are base on false assumptions about the

19  evidence of this petitioner's guilt, the use of his report is a

20  violation  of this petitioner's right to liberty under the State

21  and Federal Constitutions. (H.T. 56-59).

22

23      A.  THE BOARD OF PAROLE HEARINGS ALLOWED DEPUTY DISTRICT

24          ATTORNEY MORRISON TO INTRODUCE FALSE STATEMENTS AND

25          UNFOUNDED FACTS INTO THE RECORD DURING CLOSING ARGUMENTS.

26  Following the psych. report inquiry, the deputy district

27  attorney was allowed to ask petitioner questions. (H.T. 61-63)

28

QUESTION (6) iii.

CONTINUE QUESTION (6). SUPPORTING FACTS (a): GROUND ONE:

1   "Deputy district attorney Morrison asked petitioner to explain

2   the facts reported in the official version that he was mad at

3   the victim for smoking up the dope, threatened him pulled out

4   the gun and shot him." (H.T. 62: lines 4-9). Petitioner offered

5   to explain, and stated, "That is false. I did note (sic) do that

6   what they're alleging in the complaint, and I mean, if you want

7   me to present my disputes regarding the accuracy veracity of the

8   facts, I can do that." (H.T. 62: lines 10-17).

9   The Presiding Commissioner stopped petitioner by stating, "Mr.

10  Lewis, let me -- that's not the way to go. What we're going to

11  do is let him ask you questions, you answer the questions and

12  when you do your closing, you can certainly present your own

13  case then." (H.T. 62: lines 18-23). Petitioner agreed. Then the

14  deputy district attorney asked whether petitioner accepts the

15  responsibility for the crime, and petitioner said "No, sir".

16  The Panel then turned to closing arguments, attorney Morrison

17  was allowed to proceed first. the first report spoke of by the

18  deputy district attorney is the police reports in the case, the

19  deputy district attorney recited from the statements within the

20  police report. Petitioner asked that the dep. district attorney

21  specifically identify what document he's referring to. (H.T. 63-

22  64). (See App. "1," Police Report.)

23  The Presiding Commissioner stated, "Let me help you out. He's

24  not required to do that but what I'm going to encourage you to

25  do, you also have the opportunity when you do your closing, to

26  dispute anything that the district attorney is saying for your

27  (sic). But at this point, this is his opportunity to do his

28  whole closing, okay." (H.T. 64).

QUESTION (6) iv.

CONTINUE QUESTION (6) SUPPORTING FACTS (a): GROUND ONE:

1    The deputy district attorney, then referred to the statement
2   of Edna Gonzales, petitioner's prior manslaughter conviction,
3   the investigating officer Brent Josephson's statements in the
4   probation officer's report, at page 12, that the psych. report
5   was unfavorable and not favoring release at this time because of
6   risk assessment, that he commends petitioner's programming but
7   believe he's still a danger and should not be release at this
8   time. (H.T. 65).

9    Petitioner was allowed his opportunity to give his closing,
10   and reffered to the police report that the deputy district attn.
11   reffered to, petitioner explained that the report was part of
12   his legal challenge and legal disputes. Petitioner, pointed out
13   that the statement of Ms. Edna Gonzales was not written by her,
14   but in fact was written by detective Josephson. Petitioner told
15   the panel that the detective **omitted adverse facts** to this
16   statements. Petitioner clearly put at issue the veracity of what
17   was recited by detective Josephson, and that the detective had
18   omitted material facts regarding Gonzales being under the influ-
19   ence of drugs, alcohol and cocaine during the witnessing of this
20   shooting. That the context of this statement was omitting vital
21   adverse material information, omitted by the detective who had
22   wrote it. (H.T. 66-67). *(See App."I", Police Report.)*

23    Petitioner then turned his focus to the preliminary hearing
24   transcript, page 14. Where by virtue of a special rule of law,
25   Penal Code §872(b), detective Josephson was allowed to give
26   sworn hearsay testimony to establish probable cause. Petitioner
27   quoted the portions of the detective's testimony where under the
28   penalty of perjury the detective denied knowledge of substantial

QUESTION (6) v.

CONTINUE QUESTION (6) SUPPORTING FACTS (a): GROUND ONE:

1  and material facts affecting the credibility and reliability of

2  the hearsay evidence under oath. (H.T. 67-68).

3     The Presiding Commissioner stop petitioner, impling that this

4  petitioner was straying form suitability. (H.T. 68).

5     Petitioner stated, "Well, I was just going towards what the

6  prosecutor referred to as correct. So, I wanted to dispute that

7  is not totally correct." (H.T. 68).

8     The Presiding Commissioner, acknowledged that petitioner had

9  already put on the record the issue, that they have all the same

10 documents, that the issues petitioner was raising, was not part

11 of there job, that they could not help petitioner with his legal

12 argument, that they were not the right people to tell. (H.T. 68:

13 lines 10-26).

14    The Deputy Commissioner, stated, "We do see your point, and I

15 did see in here what you're saying, and I do know you're going

16 to refer in here." (H.T. 68-69).

17    Petitioner complied with the panels request, and both panel

18 members assured petitioner that they, "So, we got it" "And for

19 the record, I'll review it during deliberations also". (H.T. 69:

20 lines 5-10).

21    Petitioner brought out that the sole witness in this case was

22 given immunity, and the jury was told she did not know she had

23 immunity, to bloster her credibility. (H.T. 69). Petitioner was

24 told to get back to suitability. (H.T. 69).

25    Petitioner began his closing argument in support of his being

26 found suitable, and why he was not a threat to society. First,

27 petitioner pointed out his institutional behavior, strong family

28 support, and his sorrowfuless in the circumstances of this case,

Question (6) vi.

CONTINUE QUESTION (6) SUPPORTING FACTS (a.): GROUND ONE:

1  petitioner denied having committed the crime, but a human life
2  was lost and that's a tragedy for everyone involved. petitioner
3  offered his consistency throughout his prison term, that the
4  psych. report was not accurately reflecting his current mental
5  state. Petitioner pointed out that the only factors that weigh
6  real heavily against petitioner is the fact that petitioner has
7  two convictions for taking human lives. But, petitioner disputes
8  the conviction in the current case, and claims not to have been
9  the person who committed the current crime. Petitioner pointed
10  out that he has already served (16) years in prison for it, the
11  fact that he was convicted for it. Not accepting responsibility
12  cannot be weighed against petitioner. But, the Court of Appeals
13  opinion and the facts as given by detective Josephson and the
14  witness Gonzales were false. That the panel claims to not be
15  able to resolve these allegations, but that petitioner believes
16  the panel could. (H.T. 70).

17  Petitioner told the panel why his was ready to be released
18  and why the psychologist report was being challenged in a (602)
19  Appeal, that petitioner was on the right path, and had the will
20  to being a law-abiding and productive person, that the interact-
21  ing with other human being is the most important thing. (H.T.71:
22  lines 5-28). Petitioner assured the panel that he would not harm
23  any other person if released. (H.T. 72).

24  B. CALIFORNIA BOARD OF PAROLE HEARINGS DECISION:

25  The panel found petitioner unsuitable for parole and based
26  it's reasons as follows: (1) the commitment offense, (2) prior
27  criminal record of violence, (3) Dr. Macomber's psychologist
28  report, (4) District Attorney's opposition. (H.T. 73-81).

QUESTION (6) vii.

QUESTION (6) SUPPORTING FACTS (a); GROUND ONE.

C. THIS APPELLATE COURT'S FACTUAL FINDINGS HAS CAUSE THE

BOARD OF PAROLE HEARINGS OFFICIALS TO RELY AND MAKE AN

UNREASONABLE DETERMINATION OF THE FACTS.

1  On August 3, 1992, this Court found in relevent part that,

2  "Appellant left the area and returned approximately 15 minutes

3  later carrying a sock which apparently contained a gun. Appell-

4  ant resumed the argument with Fairley, 'then suddenly ran inside

5  the house,' leaving Fairley outside. Inside, appellant appeared

6  angry and 'pointed the gun at the others present' and stated

7  that he would shoot Fairley if Fairley continued messing with

8  him. Appellant then went back outside, pointed the gun at Fairley

9  and stated, "I'll put this through your . . .head." Appellant

10 then fired the gun, fatally wounding Fairley. . ." (See App.

11 "2", Court of Appeal opinion, p.3)

12     This Court did not possess the police report during the

13 adjudication of the direct-appeal. The "Preliminary Investigation

14 Report" (Report) was completed by officers Josephson and Tizano

15 of the Los Angeles Police Department (LAPD) in the course of

16 inveestigating the death of Curtis Fairley, Case No. 90-0525042.

17 (See Appendix "1").

18     The first page of the Report lists two witnesses; Esmeralda

19 Mendez and Edna Gonzales. (App. "1") The second page of the

20 Report lists 9 witnesses. (App. "1", p.2) The first five witness-

21 es on the second page of the Report appear to have tape-recorded

22 interviews. (App. "1", p.2).

23     The report only contains written statements from four people:

24 Esmeralda Mendez, Edna Gonzales, Rudy Roldan, and Esther Collins.

25 (See App. "1", Follow-Up Investigation Report.)

1  QUESTION (6) SUPPORTING FACTS (a); GROUND ONE.

2      Witnesses Esmeralda Mendez was inside the house with Edna

3  Gonzales at the time of the shooting. Mendez does not confirm

4  or collaborate that petitioner pointed a gun at her. No evidence

5  supports a finding that petitioner pointed a gun at her. (See

6  App. "1", Written Statement of Esmeralda Mendez.)

7      The content of witnesses Ade "A-Day" Ogunseye, Christina

8  Roman, and Patricia Pena statements or tape-recorded interviews

9  are not recorded in written form. There is no way to know what

10 they told police about the events leading up to the shooting and

11 after the shooting. But, these witnesses were inside the house

12 with Edna Gonzales at the time of the shooting. (See App. "1").

13     Witnesses Mendez, Ogunseye (A-Day), Roman, and Pena were not

14 **called** as witnesses, and appears to have never claimed a gun was

15 **pointed at them inside the house by** petitioner. (See App. "1")

16     The Report contains a written statement from Rudy Roldan,

17 who lived next to the house where the shooting occurred. Roldan

18 did not identify petitioner at the police interview, nor did the

19 states call Mr. Roldan at petitioner's trial proceedings. (See

20 App. "1")

21     D. SUPERIOR COURT FINDINGS.

22     On July 20, 2007, the Honorable Peter Espinoza, Superior

23 Court Judge, found "some evidence" supported the Board's deci-

24 sion to denying petitioner parole. These findings were based

25 upon the written statements of Rudy Roldan and Esmeralda Mendez

26 recounted by district attorney Morrison. (H.T. 62-64) Mendez's

27 and Roldan's accounts have not been adjudicated as facts before

28 the jury, neither witness testified at petitioner's trial.

CONTINUE QUESTION (6) SUPPORTING CASES, RULES, OR AUTHORITY:
GROUND ONE: (b).

1

2   The United States Supreme Court held in 1979, and reiterated

3   in 1987, that "a state's statutory scheme, if it uses mandatory

4   language, creates a presumption that parole release will granted

5   when or unless certain designated findings are made, and thereby

6   gives rise to a constitutional liberty interest." Greenholtz v.

7   Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of

8   Pardons v. Allen, 482 U.S. 369, 373 (1987).

9   California Courts analyze claims regarding denial of parole

10   under due process standards. See In re Dannenberg, 34 Cal.4th

11   1061, 1095-96 (2005); In re Scott, 133 Cal.App.4th at 590-91;

12   In re De Luna, 126 Cal.App.4th at 593-598; In re Smith, 114 Cal.

13   App.4th 343, 366-67 (2003).

14   California Penal Code §1473 (b)(1) provides that if, "False

15   evidence that is substantially material or probative on the

16   issue of guilt or punishment was introduced against a person at

17   any hearing or trial relating to his incarceration"--- may be

18   inquired into by prosecuting a writ of habeas corpus, to inquire

19   into the cause of such imprisonment or restraint. P.C. §1473.

20   Petitioner denied committing the current commitment offense,

21   and offered evidence of perjury by the state prosecutor and lead

22   detective at the preliminary hearing as new evidence of innocence

23   to the Board panel. The said they would review the evidence, but

24   failed to incorporate any decision on that evidence, (i.e.) the

25   preliminary hearing and trial transcripts showing sworn perjured

26   testimony by detective Josephson. The Board's Decision is based

27   on False evidence that was submitted pursuant to a special rule

28   of law Penal Code §872(b), and violates Due Process.

QUESTION (6) (b) i.

CONTINUE QUESTION (6) SUPPORTING CASES, RULES, OR AUTHORITY:
(b). GROUND ONE:

1

2    Petitioner squarely put at issue 'whether the evidence from

3    the state' was reliable. The panel declined to address whether

4    the veracity and accuracy of the evidence was in question, and

5    did not allow petitioner to fully dispute the circumstances by

6    newly presented evidence of perjury by the state prosecutor and

7    lead detective at the probable cause determinations and at the

8    trial court.   Petitioner put on the record that the police report

9    omitted material information, that the detective lied in court

10   at the preliminary hearing regarding the omitted material to the

11   judge in that court, and at trial failed to reveal that he had

12   misled the judge at the preliminary hearing.

13   Although parole proceedings are not part of the criminal pro-

14   secution, certain procedural protections still apply. Morrissey

15   v. Brewer, 408 U.S. 471, 481 (1972); Powell v. Gomez, 33 F.3d

16   39, 40 (9th Cir. 1994).

17   Petitioner is alleging that false reports and false testimony

18   is being relied on by the Board of Parole Hearings to deny this

19   petitioner parole, and that the Board members are knowingly and

20   recklessly failing to address this relevant and material facts.

21   See Monroe v. Thigpen, 932 F.2d 1437, 1441-42 (11th Cir. 1991);

22   also Johnson v. Rodriguez, 110 F.3d 299, 308-09 (5th Cir. 1997).

23   Petitioner has claimed 'innocence' and has produced evidence

24   in support of his innocence, i.e. duly certified state court

25   records showing that state representatives committed perjury to

26   obtain this conviction and that any parole decision denying this

27   petitioner parole based upon the circumstances of the gravity of

28   the crime violates due process under state and federal law.

QUESTION (6) (b) ii.

1  CONTINUE QUESTION (6) SUPPORTING CASES.

2     "The intentional suppression of material evidence by the state

3  would, of course, be a denial of a fair trial and due process. .

4  . This could, in some circumstance, be manifest by a failure of

5  the prosecution to call certain witnesses. . ." **People v. Kiihoa**

6  (1960) 53 Cal..2d 748, 752; **People v. Riser** (1956) 47 Cal.2d 566.

7     The California Supreme Court in, **In re Ferguson** (1971) 5 Cal.

8  3d 525, 531-533 held: "The duty of the district attorney is not

9  merely that of an advocate. His duty is not to obtain convictions,

10  but to **fully and fairly** present to the court the evidence mater-

11  ial to the charge upon which the defendant stands trial, and it

12  is the solemn duty of the trial judge to see that the facts

13  material to the charge are **fairly presented.**" **People v. Kiihoa,**

14  supra, 53 Cal.2d at 753.

15     Here, the district attorney has place unfounded statements of

16  witnesses Mendez and Roldan into the record at the Board of Parole

17  hearings suitability hearing. (H.T. 61-64) The Board and Superior

18  Court has relied upon these unfounded statements, and this Court

19  has relied upon false accusation in this Court's opinion. If this

20  Court carefully examines the police Report it will find that no

21  person other than Gonzales claims a gun was pointing at them. So,

22  the question is where is the evidence to support the factual find-

23  ings by this Court about the 'pointing of a gun at the others in

24  the house' and the finding by the Superior Court the statements

25  of Mendez and Roldan are not reliable, they are **hearsay**, and were

26  not present at trial. The goal is the ascertainment of **truth**, the

27  truth is being sequestered and concealed. **In re Ferguson,** supra,

28  5 Cal.3d at 531-532.

                        Question (6)(b) iii.

7. Ground 2 or Ground _____ (if applicable):

THE BOARD OF PAROLE HEARINGS DENIED PETITIONER THE RIGHT TO HAVE HIS
SUITABILITY DETERMINED BASED UPON ALL RELEVANT, RELIABLE INFORMATION
DISPUTING THE VERSION IN THE RECORD. California Code of Regulations,
Title 15, §2236 and §2249, relating to personal culpability.

a. Supporting facts:

Petitioner submitted written material to the panel showing that the
police report was falsified by deliberate omissions and perjury by the
lead detective. (H.T. 7-9). The panel assured petitioner that the
documents he submitted would be considered several times. (H.T. 8-9,66-
68. If fact both Board member assured petitioner that they saw the
point petitioner was making, "we got it", "and for the record, I'll
review it during deliberations" (H.T. 68-69). No where did the panel
mention what there findings were with respect to the documents that
petitioner submitted disputing the version in the record in their
Decision. The panel did not tell petitioner that his allegations were
unfounded, instead they told petitioner there is nothing they can do,
that's not there job. (H.T. 68: lines 10-26). Who are the right people
to tell my complaint to then, if not the people who have my life in
their hands?

b. Supporting cases, rules, or other authority:
Penal Code §3041.5. ; California Code of Regulations, Title 15, §2245;
§2236, §2249, §2402.  SCHLUP v. DELO, 513 U.S. 298 (1995); HOUSE v.
BELL, 547 U.S. ___ (2006). A parole decision supported by some evidence
may nonetheless abrogate due process if the Board did not consider and
weigh all favorable evidence. In re Capistran (2003) 107 Cal.App.4th
1299, 1306. In re Cordero (1988) 249 CR 354-356.

8. Did you appeal from the conviction, sentence, or commitment? ☒ Yes. ☐ No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
       _____ California Court of Appeal _____

   b. Result: _____ Affirmed _____    c. Date of decision: _8-3-92._

   d. Case number or citation of opinion, if known: _____ B059483 _____

   e. Issues raised: (1) __Trial court failed to instruct on Lesser Included Offenses.__

       (2) _Trial court erred in sentencing enhancement term._____

       (3) _____

   f. Were you represented by counsel on appeal? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known:

       _Robert Derham, address unknown._____

9. Did you seek review in the California Supreme Court? ☐ Yes. ☒ No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   __Petitioner did not possess the record on appeal, appointed counsel__

   __failed to uncover perjury in the state court record and was ineffective.__

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   _Petitioner currently has a (602) Appeal Form: C.D.C. Appeal Number_

   _06-01286, pending at the Third Level Review, regarding the false_

   _statements made by Dr. Macomber in his psychological report that_

   _was relied on by the Board to find unsuitability. See Exhibit "A"._

   _____

   _____

   _____

   _____

   b. Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.
   *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? [X] Yes. If yes, continue with number 13. [ ] No. If no, skip to number 15.

13. a. (1) Name of court: Superior Court Of Los Angeles County

(2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus Petitions.

(3) Issues raised: (a)   Petitioner has filed multiple petitions.

(b) Raising many state and federal due process violations.

(4) Result (Attach order or explain why unavailable):   All were summarily denied.

(5) Date of decision:   Through this entire incarcerations 1992-2006.

b. (1) Name of court:   California Court of Appeal; Second Appellate, Div. One.

(2) Nature of proceeding:   Habeas Corpus Petitions.

(3) Issues raised: (a)   See Chronological Listing attached.

(b) _____

(4) Result (Attach order or explain why unavailable):   All summarily denied.

(5) Date of decision:   1992-2006.

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result.
Petitioner has never been given a hearing at anytime during all of the prior filings, but formally request this Court order a hearing!

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
Petitioner was deceived by the state courts because of incompetent counsel appointed by the state, in collusion with the prosecutor at trial.

16. Are you presently represented by counsel? [ ] Yes. [XX] No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? [X] Yes. [ ] No. If yes, explain:
Petitioner has several other matters pending in several courts all in the federal courts, regarding this petitioner's "actual innocence".

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
This is the proper court to refer this matter to, hopefully this court will do the right thing and order the proper procedure to resolve this case.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 8/5/2007                    ▶ *Vondell L. Lewis*
                                                    (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS          Page six of six

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | | | |
|---|---|---|---|---|
| Date: | JULY 20, 2007 | | | |
| Honorable: | PETER ESPINOZA | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH004281
In re,
VONDELL L. LEWIS,
          Petitioner,
On Habeas Corpus

Counsel for Petitioner:

Counsel for Respondent:

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered the petition for writ of habeas corpus filed on September 11, 2006 by petitioner. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings (hereafter "Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole. (See Cal. Code Reg. tit., 15, § 2402; *In re Rosenkrantz* (2002) 29 Cal. 4th 616, 667 (hereafter *Rosenkrantz*).)

Petitioner was received in the Department of Corrections on May 14, 1991, after a conviction for second-degree murder. He was sentenced to 15 years to life. His minimum parole eligibility date was September 20, 2003. The record reflects that on August 30, 1990, petitioner and the victim got into an altercation over drugs. At some point, petitioner removed a small handgun from his pocket and fired one round at the victim, striking the victim in the head. The victim died as a result of the gunshot wound.

The Board found petitioner unsuitable for parole after a parole consideration hearing held on May 5, 2006. Petitioner was denied parole for 2 years. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.

The Court finds that there is some evidence to support the Board's finding that "the offense was carried out in a dispassionate and calculated manner." (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B).) Petitioner shot the unarmed victim during an altercation over drugs. Prior to the incident, petitioner told the victim ". . . get out of my house, and if you come back, I'll shoot in the neck . . . " (*Reporter's Transcript*, May 5, 2006, p. 64.) Petitioner then shot the victim in the head.

The Court finds that there is no evidence to support the Board's finding that "the offense was carried out in manner which demonstrates an exceptionally callous disregard for human suffering." (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D).) An "exceptionally callous disregard for human suffering" means that "the offense in question must have been committed in a more aggravated or violent than that ordinarily shown in the commission of second degree murder." (*In re Scott* (2004) 119 Cal. App. 871, 891.) Petitioner did the minimum necessary to commit his crime, one shot to the victim's head. (See *In re Lee* (2006) 143 Cal. App. 4th 1400, 1412.) Petitioner fled the scene of the crime, after checking on the victim and summoning aid.

1.

# *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*
### DEPT 100

| Date: | JULY 20, 2007 | | | |
|---|---|---|---|---|
| Honorable: | PETER ESPINOZA | Judge | JOSEPH M. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

| BH004281 | |
|---|---|
| In re, | |
| VONDELL L. LEWIS, | Counsel for Petitioner: |
| Petitioner, | |
| On Habeas Corpus | Counsel for Respondent: |

The Court finds that there is some evidence to support the Board's finding that the motive was inexplicable in relation to the offense. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E).) An inexplicable motive is "one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose." (*In re Scott, supra,* 119 Cal. App. 4th 871, 893.) In this case, petitioner and the victim were arguing over drugs. The victim was unarmed. Petitioner fired one shot at the victim, killing him for no apparent reason.

An inmate may also be unsuitable for parole if the inmate has on "previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." (Cal. Code Regs., tit. 15, § 2402, subd. (c)(2).) The record reflects that when petitioner was a juvenile, he was convicted of voluntary manslaughter. The petitioner shot the victim with a handgun. Petitioner was convicted of several other offenses that were related to drugs; however, the drug-related offenses did not involve crimes of violence.

An inmate may also be unsuitable for parole if the inmate has a "history of unstable or tumultuous relationships with others." (Cal. Code Regs., tit. 15, § 2402, subd. (c)(3).) The record reflects that petitioner started taking drugs at an early age. Prior to the commitment offense, petitioner was convicted of several crimes related to drugs. Petitioner had several failed opportunities of grants of parole and probation. Petition associated with members of a gang. Petitioner lost his basketball scholarship to Hawaii Pacific College due to his involvement with drugs. Petitioner's early drug use, involvement in criminal activity, lack of amenability to supervision, and gang associations is "some evidence" of an unstable social history.

Accordingly, the petition is denied.

The court order is signed and filed this date. The clerk is directed to give notice.

A true copy of this minute order is sent via U.S. Mail to the following parties:

Vondell L. Lewis
E-95977
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice - State of California
Office of the Attorney General
110 West A Street, Suite 1100
San Diego, California 92101
Attn: Cynthia Lumely

2

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES**<br>COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA  90012<br>PLAINTIFF/PETITIONER:<br><br>VONDELL L. LEWIS | Reserved for Clerk's File Stamp<br><br>**CONFORMED COPY**<br><br>JUL 2 6 2007<br><br>**LOS ANGELES<br>SUPERIOR COURT**<br><br>Joseph M. Pulido |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br><br>BH004281 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

- ☐ Order Extending Time
- ☐ Order to Show Cause
- ☐ Order for Informal Response
- ☐ Order for Supplemental Pleading

- ☑ Order re: Writ of Habeas Corpus
- ☐ Order
- ☐ Order re:
- ☐ Copy of Petition for Writ of Habeas Corpus for the Attorney General

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to the cause.  I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

JUL 2 6 2007

DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: *Joseph M. Pulido* , Clerk
       Joseph M. Pulido

Vondell L. Lewis
E-95977
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice - State of California
Office of the Attorney General
110 West A Street, Suite 1100
San Diego, California 92101
Attn: Cynthia Lumely

COURT OF APPEAL OF THE STATE OF CALIFORNIA
FOR THE SECOND APPELLATE DISTRICT
DIVISION 1

Vondell L. Lewis
vs.
S. C. L. A.
The People

CASE NUMBER:    B186688
NOA/PET DATE:   10/21/05
STATUS:         Complete
PRIORITY:
CAUSE:          Original proceeding
CASE TYPE:      Criminal
DISP DATE:      11/10/05
FINAL DISP:     Petition summarily denied by order
ORIGIN:         Received from superior court
CATEGORY:       opmp   Other mandt & prohib petitions

OLD CASE NUMBER(S):    B059483
                       B069163
                       B071804
                       B088681
                       B092711
                       B096273
                       B099412
                       B123345
                       B125436
                       B160355
                       B181826
                       B185145
                       B185871

TRIAL COURT INFORMATION

Case No.:   NA004741
County:     Los Angeles
Court:      Los Angeles County Superior Court
Judge:
Jud. Date:

B186688 as of 2/2/06

| Last Name | First Name | Party Role | Number | Case Category | Start Date | |
|---|---|---|---|---|---|---|
| LEWIS | VONDELL | Petitioner | S137146 | Review - Criminal Original (non- | 09/12/2005 | c |
| LEWIS | VONDELL | Petitioner | S133727 | Review - Habeas (criminal) | 05/09/2005 | c |
| LEWIS | VONDELL | Petitioner | S118585 | Original Proceeding - Habeas | 08/29/2003 | c |
| LEWIS | VONDELL | Petitioner | S116664 | Original Proceeding - Habeas | 06/13/2003 | c |
| LEWIS | VONDELL | Petitioner | S109876 | Original Proceeding - Habeas | 09/16/2002 | c |
| LEWIS | VONDELL | Petitioner | S072062 | Review - Habeas (criminal) | 07/23/1998 | c |
| LEWIS | VONDELL | Petitioner | S058123 | Original Proceeding - Habeas | 12/30/1996 | c |
| LEWIS | VONDELL | Petitioner | S055976 | Original Proceeding - Habeas | 09/09/1996 | c |
| LEWIS | VONDELL | Petitioner | S052184 | Original Proceeding - Habeas | 03/06/1996 | c |
| LEWIS | VONDELL | Petitioner | S049687 | Review - Habeas (criminal) | 10/30/1995 | c |
| LEWIS | VONDELL | Petitioner | S047605 | Original Proceeding - Habeas | 07/12/1995 | c |
| LEWIS | VONDELL | Petitioner | S044497 | Original Proceeding - Habeas | 01/18/1995 | c |
| LEWIS | VONDELL | Petitioner | S032666 | Original Proceeding - Habeas | 05/06/1993 | c |
| LEWIS | VONDELL | Petitioner | S031168 | Original Proceeding - Habeas | 02/11/1993 | c |

| Case Status | Assigned Justice | Branch | Disposition Date |
|---|---|---|---|
| sed | | San Francisco | 10/19/2005 |
| sed | | San Francisco | 06/22/2005 |
| sed | | San Francisco | 06/16/2004 |
| sed | | San Francisco | 02/18/2004 |
| sed | | San Francisco | 05/14/2003 |
| sed | | San Francisco | 08/26/1998 |
| sed | | San Francisco | 03/26/1997 |
| sed | | San Francisco | 11/26/1996 |
| sed | | San Francisco | 06/26/1996 |
| sed | | San Francisco | 12/13/1995 |
| sed | | San Francisco | 08/30/1995 |
| sed | | Los Angeles | 02/22/1995 |
| sed | | Los Angeles | 08/25/1993 |
| sed | | Los Angeles | 03/31/1993 |

Exhibit "A"

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  JONATHAN L. WOLFF
   Supervising Deputy Attorney General
5  SAMANTHA D. TAMA, State Bar No. 240280
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5708
    Fax:  (415) 703-5843
8   Email:  Samantha.Tama@doj.ca.gov

9  Attorneys for Defendants N. Grannis, B. Zika, K.
   Sather, and M. Macomber

10

11

12                 IN THE UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                       SAN FRANCISCO DIVISION

15  | VONDELL LA FRAN LEWIS,        | C 06-5935 MJJ (PR) |

16  |                    Plaintiff, | **DECLARATION OF M. MACOMBER IN SUPPORT** |

17  |        v.                     | **OF DEFENDANT MACOMBER'S REPLY TO** |

18  | M. MACOMBER, et al.,          | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION** |

19  |                    Defendant. | **FOR SUMMARY JUDGMENT** |

20

21        I, M. Macomber, declare as follows:

22        1.    I am a licensed psychologist currently employed by the California Department of

23  Corrections and Rehabilitation (CDCR) as a contract employee.  I worked as a psychologist for

24  CDCR for 25 years until my retirement in 1991.  I have been employed by CDCR as a

25  psychologist on a contract basis for 12 years, since 1995.  I am competent to testify to the matters

26  set forth in this declaration, and if called upon to do so, would and could so testify.  I submit this

27  declaration in support of my reply to Plaintiff's Opposition to Defendants' Motion for Summary

28  Judgment.

Decl. Macomber Supp. Def. Macomber's Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.         *Lewis v. Macomber, et al*
                                                                                          C 06-5935 MJJ (PR)

1    2.    In completing Plaintiff Vondell La Fran Lewis' (Plaintiff's) mental health evaluation

2  for his parole consideration hearing in May 2005, I interviewed Plaintiff for one hour.  I also

3  reviewed Plaintiff's Central File, which contained a Los Angeles Police Department (LAPD)

4  report regarding the investigation into Plaintiff's commitment offense.  In writing my evaluation

5  of Plaintiff, I relied upon both Plaintiff's statements during my interview with him, as well as the

6  LAPD report.

7    3.    The LAPD report contains statements from four witnesses to Plaintiff's crime.  In these

8  statements, one witness described that she observed Plaintiff shoot the victim, and the other three

9  witnesses recounted that they heard the shooting.  I relied upon this report and these witnesses'

10  statements when I wrote in Plaintiff's Evaluation under the heading "Assessment of

11  Dangerousness" that "[a]lso, quite troubling in this case is the fact that he is strongly denying his

12  responsibility for the victim's death in the commitment offense.  This is in spite of the fact that

13  there were several witnesses that observed him shoot the victim with a gun and testify to the

14  detective to that fact."  A true and correct copy of relevant portions of the LAPD report is

15  attached as Exhibit A to this declaration, for the Court's reference.[1]

16    4.    I administered the Level of Service Inventory-Revised, which is an actuarial measure

17  that assesses many factors to determine Plaintiff's risk on parole, and determined that Plaintiff's

18  score placed him higher than the average citizen in the community for potentially dangerous

19  behavior.

20  ///

21  ///

22

23

24

25

26

27

28  ___

    1.  A copy of the LAPD report was also submitted with Defendants' moving papers in their
motion for summary judgment.

Decl. Macomber Supp. Def. Macomber's Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.        *Lewis v. Macomber, et al*
                                                                                        C 06-5935 MJJ (PR)

2

5.    When Plaintiff filed an inmate appeal challenging the accuracy of my statement in his
Evaluation regarding the number of witnesses to his commitment offense, I again reviewed his
central file. After re-reviewing Plaintiff's central file, I determined that my original Evaluation
was accurate, and that it did not require any revisions.


      I declare under penalty of perjury that the foregoing is true and correct.  Executed in Granite
Bay, California, on July 7, 2007.

                                                    Melvin Macomber, Ph.D.

Decl. Macomber Supp. Def. Macomber's Reply to Pl.'s Opp'n to Defs.' Mot. Summ. J.          *Lewis v. Macomber, et al*
                                                                              C 06-5935 MJJ (PR)

3

## MENTAL HEALTH EVALUATION FOR
## THE BOARD OF PRISON HEARINGS
### May, 2006 Lifer Calendar

## CORRECTIONAL TRAINING FACILITY SOLEDAD
### APRIL, 2006

| | |
|---|---|
| **NAME:** | **LEWIS, VONDELL** |
| **CDC#:** | E-95977 |
| **DOB:** | 5/23/66 |
| **OFFENSE:** | PC 187 MURDER, SECOND DEGREE |
| **DATE OF OFFENSE:** | 8/30/90 |
| **SENTENCE:** | 20 YEARS TO LIFE |
| **MEPD:** | 9/30/03 |
| **EVALUATION DATE:** | 4/14/06 |

I.     **IDENTIFYING INFORMATION:**

Mr. Vondell Lewis is a 40 year old, first term, married, but separated, African-American male. He has served 16 years on his sentence from Los Angeles County.

**SOURCES OF INFORMATION:**

This evaluation is based upon a single 1 hour interview, plus review of the central and medical files.

The psychological evaluation, dated 5/17/02, by Dr. Saindon, Psychologist at CTF-Soledad, contains a Psychosocial Assessment which is still current and valid. As a result, this information will not be repeated at this time.

LEWIS, VONDELL
E-95977
4/14/06
PAGE 2

## CLINICAL ASSESSMENT

### XII.   CURRENT MENTAL STATUS/TREATMENT NEEDS

Mr. Lewis related in a charming, glib, talkative, and persuasive manner. Hygiene and grooming were good. He was alert and well oriented. His thinking was rational, logical and coherent. His speech was normal, fluent and goal oriented. His eye contact was good. Intellectually, he is functioning in the average ranges. His memory was intact. His judgment and insight cannot be determined, because he denies the crime.

Mr. Lewis openly confessed to his history of serious substance abuse problems as well as of sales, his gang involvement, and his criminal activities to support himself. He openly acknowledges that his lifestyle was wrong, and that he is striving to change his way of living and become a productive and constructive person.

### CURRENT DIAGNOSTIC IMPRESSION

Axis I:      Alcohol and drug dependence, by history
Axis II:     Antisocial personality disorder, by history, improving
Axis III:    Asthma
Axis IV:     Life term incarceration
Axis V:      Current GAF: 85

### XIII.   REVIEW OF LIFE CRIME

Mr. Lewis explained at length that he is appealing his conviction legally. He is claiming that the chief witness in his trial was intoxicated at the time she observed the crime, as well as when she was on the stand. She admitted to her use of cocaine. He stated that he was not the one that shot the victim, although he was arguing and fighting with the victim at the time he died. He does not know who shot the victim.

LEWIS, VONDELL
E-95977
4/14/06
PAGE 3

## XIV.  ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, he has done very well in obeying institutional rules. His only disciplinary was in 1993 for cutting in line ahead of others. There is no indication of participation in riots, violence towards others, possession of weapons, or threats toward others. As a result, his potential for dangerous behavior compared to other inmates appears to be below average.

B. In considering potential for dangerous behavior if released to the community, the prior psychologist noted that the troubling fact of this case was that Mr. Lewis has been convicted of this murder and manslaughter once in the past. This sequence of violence is well outside the average for the population on the outside of prison. Since past behavior is a strong predictor of future behavior, this fact must be considered. Also, quite troubling in this case is the fact that he is strongly denying his responsibility for the victim's death in the commitment offense. This is in spite of the fact that there were several witnesses that observed him shoot the victim with a gun and testify to the detective to that fact. There is an absence of remorse and sorrow for his behavior in the commitment offense. The Level of Service Inventory-Revised was administered. It is an actuarial measure that assesses criminal history, substance abuse history, current adjustment and other factors to determine current risk level on parole. His score on this actuarial measure is in the low to moderate risk level. His score indicated a 31.1 percent chance of recidivism. This score definitely places him higher than the average citizen in the community for potentially dangerous behavior.

C. The most significant risk factor in this case would be any return to alcohol, drugs, or gang affiliation.

Lewis                    E-05524                    CTF-Soledad                    4/8/06

LEWIS, VONDELL
E-95977
4/14/06
PAGE 4


## XV.    CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

Although Mr. Lewis has no significant mental or emotional problems, he does have a very serious criminal history as reflected in his score under "Section B" above. He is functioning in the institution as the lead cook in culinary. Apparently, he has developed sophisticated cooking skills that he plans on pursuing when he is released. Research shows that individuals like Mr. Lewis with antisocial backgrounds, do improve with time, age and maturity. Hopefully, with continued ongoing good adjustment in the institution, participation in self-help programs dealing with substance abuse, and continued improvement, his risk level will diminish.


M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad


B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

**D:**    4/13/06
**T:**    4/20/06

STATE OF CALIFORNIA                     DEPARTMENT OF CORRECTIONS AND REHABILITATIO
                                        CORRECTIONAL TRAINING FACILITY - SOLEDAD

# Memorandum

Date:      June 9, 2006

To:        LEWIS, E-95977

Subject:   **CTF APPEAL LOG # CTF-C-0601286**
           **SECOND LEVEL RESPONSE**

**ISSUE:** Mr. Lewis, at the First Level of Review, you stated that your Life Prisoner Hearing
Psychiatric Report was incorrect and that the Psychologist made false statements within the
body of the report. You requested that a new interview be conducted. The Senior
Psychologist informed you that Dr. Macomber would review the source of information and
make corrections indicated by his review.

At the Second Level of Review, you state that you are dissatisfied with the First Level of
Review because you were denied parole because of the inaccurate report findings. You
continue to request that changes be made to the report to reflect the correct findings.

**APPEAL RESPONSE:** At the Second Level, your appeal and Unit Health Record was
thoroughly reviewed. Dr. Macomber reviewed the source of information used in your
psychological evaluation for the Board of Parole Hearings. He relied on the information in
the Central File and the Probation Report. He stands by his evaluation report. A new report
is not needed at this time.

**APPEAL DECISION:** Your Second Level appeal has been **denied** in accordance with the
policy and procedures as set forth in CCR Title 15 and DOM.

If you are dissatisfied with this decision, you may appeal to the Director's Level by
completing section "H" on your appeal form, and submitting it by mail within 15 days of
receipt of this response.

B. ZIKA, Ph.D
Senior Psychologist
CTF-Soledad

# APPendix "1"

---

## Police Report

**PRELIMINARY CASE SCREEN**

SHOTS FIRED: X

- ☐ SUSPECT / VEHICLE NOT SEEN
- ☐ PRINTS OR OTHER EVIDENCE NOT PRESENT
- ☐ NO NOT DISTINCT
- ☐ PROPERTY LOSS LESS THAN $5000
- ☐ NO SERIOUS INJURY TO VICTIM
- ☐ ONLY ONE VICTIM INVOLVED

**PRELIMINARY INVESTIGATION OF MURDER**

INVEST. DIV. SBH

DR: 90-05-250

**VICTIM**

LAST NAME, FIRST, MIDDLE (FIRM IF BUSINESS): FAIRLEY, Curtis Marvin
SEX: M   DESC: Blk   AGE: 23   3/2

ADDRESS: ___   ZIP: 90802   PHONE: ___

**PREMISES** (SPECIFIC TYPE): Residential walkway

DR. LIC. NO. (IF NONE, OTHER ID & NO): A5171485
FOREIGN LANGUAGE SPOKEN (IF APPLICABLE): ___
OCCUPATION: ___

**ENTRY** — POINT OF ENTRY / POINT OF EXIT

- ☐ FRONT
- ☐ REAR
- ☐ SIDE
- ☐ ROOF
- ☐ FLOOR
- ☐ OTHER

LOCATION OF OCCURRENCE: 315 Gulf Ave.
SAME AS V'S ☐   RES. ☐   BUS. ☐   A.O.: 525

PRINTS BY: PRE   ATTEMPT: Y   OBTAINED: Y

METHOD: ___
INSTRUMENT / TOOL: ___

DATE & TIME OF OCCURRENCE: 8-30-90   0600
DATE & TIME REPORTED TO PD: 8-30-90   0606

TYPE PROPERTY STOLEN / LOST / DAMAGED ☐   3.4 GIVEN ☐
STOLEN / LOST: $ ___   RECOVERED: $ ___   EST DAMA ARSON/M: $ ___

**VICT'S VEH.** (IF INVOLVED) - YEAR, MAKE, TYPE, COLOR, LIC. NO.

NOTIFICATIONS (PERSON & DIVISION): J. Rinallo #17147 – DHD
CONNECTED REPORTS (TYPE & DR#): Death-Property same DR#

**MO** IF LONG FORM, LIST UNIQUE ACTIONS. IF SHORT FORM, DESCRIBE SUSPECT'S ACTIONS IN BRIEF PHRASES, INCLUDING WEAPON USED. DO NOT REPEAT ABOVE INFO BUT CLARIFY REPORT AS NECES IF ANY OF THE MISSING ITEMS ARE POTENTIALLY IDENTIFIABLE, ITEMIZE AND DESCRIBE ALL. ITEMS MISSING IN THIS INCIDENT IN THE NARRATIVE

Suspect shot victim during a gang/narcotic related argument.

MOTIVATED BY HATRED / PREJUDICE ☐
DOMESTIC VIOLENCE ☐

**REPORTING EMPLOYEE(S)**

| INITIALS, LAST NAME | SERIAL NO. | DIV. / DETAIL |
|---|---|---|
| B. Josephson | 21999 | SBH |
| C. Tizano | 21682 | SBH |

**PERSON REPORTING** x
SIGNATURE: ___   OR RECEIVED BY PHONE — ☐
NOTE: IF SHORT FORM AND VICTIM / PR ARE NOT THE SAME, ENTER PR INFORMATION IN INVOLVED PERSONS SECTION

*Complete below sections if any Preliminary Case Screening boxes are not checked.*

**SUSP'S VEHICLE**

| YEAR | MAKE | MODEL | TYPE |
|---|---|---|---|
| | | | |

COLOR (S): ___   VEH. LIC. NO.: ___   STATE: ___

Interior
COLOR: ___
1 BUCKET SEATS
2 DAMAGED INSIDE

Exterior
1 CUSTOM WHEELS
2 PAINTED INSCRIPT.
3 LEVEL ALTERED
4 RUST / PRIMER
5 CUSTOM PAINT
6 VINYL TOP

Body
1 DAMAGE  5 RIGHT
2 MODIFIED  6 FRONT
3 STICKER  7 REAR
4 LEFT

Windows
1 DAMAGE  5 RIGHT
2 CUST TINT  6 FRONT
3 CURTAINS  7 REAR
4 LEFT

**S-1**

| SEX | DESC | HAIR | EYES | HEIGHT | WEIGHT | AGE | CLOTHING | NAME, ADDRESS, DOB, IF KNOWN; NAME, BKG. NO., CHARGE, IF ARRESTED |
|---|---|---|---|---|---|---|---|---|
| M | Blk | Blk | Brn | 6-4 | 255 | 24 | 5-23-66 | Lewis, Vondell  22234 Dolores St. #1.  Carson |

PERSONAL ODDITIES (UNUSUAL FEATURES, SCARS, TATTOOS, ETC.): Tattoos right hand, scars right arm & lt. wrist
WEAPON (VERBAL THREATS, BODILY FORCE, SIMULATED GUN, ETC IF NONE): .22 Caliber handgun

**S-2**

**INVOLVED PERSONS**
W - WITNESS   R - PERSON RPTG.   S - PERSON SECURING (459)   D - PERSON DISCOVERING (459)   P - PARENT
CP - CONTACT PERSON (DOMESTIC VIOLENCE)

| | NAME | SEX | DESC | DOB | ADDRESS | CITY | ZIP | PHONE |
|---|---|---|---|---|---|---|---|---|
| W1 | Mendez, Esmeralda | F | Hisp | ___ | C/O  I/O | | | |
| W2 | Gonzales, Edna | F | Hisp | ___ | C/O  I/O | | | |

DR. LIC. NO. (IF NONE, LIST OTHER ID & NO): ___
FOREIGN LANGUAGE SPOKEN (IF APPLICABLE): ___

**COMBINED EVID. RPT.**
USE THIS SECTION IN LIEU OF PROPERTY REPORT IF NO GUN AND NO MORE THAN THREE ITEMS OF EVIDENCE

LOC. EVID. BKG.: ___
10,10 GIVEN? Y   N: Preliminary Drug Test
SUPV / INN. OFCR. TESTING: ___   SER. NO: ___   WITNESS OFCR: ___   SER. NO: ___

| ITEM | QUAN. | ARTICLE | SERIAL NO./TYPE TEST OF DRUG | BRAND / DRUG WEIGHT, UNITS | MODEL NO./DRUG TEST RESULT | MISC. |
|---|---|---|---|---|---|---|
| | | | | | | |

**NARRATIVE** 1) LIST ADD'L SUSPS. & INVOLVED PERSONS. 2) RECONSTRUCT OCCURRENCE INCL. ALL ELEMENTS OF CORPUS DELICTI. 3) IF NOT USING EVID. CONTINUATION FORM, DESCRIBE EVIDENCE INCLUDE PRINTS, STATE LOCATION FOUND AND BY WHOM, GIVE DISPOSITION. 4) SUMMARIZE OTHER DETAILS, INCL. WHEN & WHERE PERSONS WITH NO PHONE CAN BE LOCATED. 5) INDICATE TYPE OF TRANSLATOR NEEDED FOR ANY INVOLVED PERSON. 6) LIST ITEMS MISSING.

VICTIM INDEMNIFICATION INFORMATION (IF APPLICABLE):
IS ANY OF THE VICTIM'S PROPERTY MARKED WITH AN OWNER APPLIED IDENTIFICATION NUMBER?
IF "YES" EXPLAIN IN NARRATIVE. YES ☐   NO ☐

**APPROVAL AND REVIEW**

SUPERVISOR APPROVING: ___   SERIAL NO.: ___
DETECTIVE SUPERVISOR REVIEWING: ___   SERIAL NO.: ___
DATE & TIME REPRODUCED: ___   CLERK: ___

Category ___

Page   2                    WITNESS LIST            DR# 90-05-5042

| NAME | RESIDENCE/BUSINESS ADDRESS & ZIP CODE | PHONE # | TAPE # |
|------|----------------------------------------|---------|--------|
| 1. MENDEZ, Esmeralda | | | 126413 |
| 2. GONZALES, Edna | | | 126413 |
| 3. OGUNSEYE, Ade. | | | 126413 |
| 4. PENA, Patricia | | | 126413 |
| 5. ROMAN, Christina | | | 124029 |
| 6. VILLAVICENCIO, Francisco | | | |
| 7. LUZURIAGA, Catalina | | | |
| 8. DELANEY, Torrey | | | |
| 9. HORTON, Charles | | | |

Page 3    PRELIMINARY INVESTIGATION REPORT    DR 90-0525042

BRIEF SYNOPSIS:

On August 30, 1990, at approximately 0600 hours Victim Curtis
Fairley was standing on the sidewalk in front of 315
Gulf Avenue, which is located within the Wilmington area of
Los Angeles. Victim Fairley was involved in an on going
argument/physical altercation with Suspect Vondell Lewis.
At this time Suspect Lewis removed a small handgun from his
pants pocket and with his left hand, fired one round striking
the victim in the head. As the victim fell to the ground, the
suspect fled the location on foot.

Los Angeles Fire Department Paramedics R. Wintermute #RW4729
and J. Lovato #JL3345, (RA #98), responded to the crime scene
and transported the victim to the Harbor General Hospital.

On August 30, 1990, at 1808 hours, the victim succumbed to his
wound and was pronounced dead by Doctor Bergsneider.

This crime occurred at a narcotic/gang location frequented by
the Waterfront Piru Blood street gang. Both victim and suspect
are associates/members of the Waterfront Piru gang and this
crime is categorized as a narcotic/gang related incident.

NOTIFICATION OF DETECTIVES:

On August 30, 1990, at 0800 hours, my partner Detective Charles
Tizano #21682 and I, Detective Brent Josephson #21999 were
notified that an attempt homicide had occurred at 309 Gulf
Avenue. The victim had been transported by paramedic ambulance
to the Harbor General Hospital where he was currently on life
support systems and not expected to live. The notification
was conducted by Detective Supervisor Paul Mize #11973 of the
South Bureau Homicide, who also advised that the crime appeared
to be gang related and that several witnesses were detained
at the Harbor Police Station.

CRIME SCENE:

On August 30, 1990, at 0855 hours, my partner and I arrived
at the crime scene, 315 Gulf Avenue and commenced the preliminary
investigation. The climatic conditions were daylight, clear
with an environmental temperature in the mid 70 degree range.

NOTE:  Weather information listed sun rise on August
       30, 1990, at 0625 hours and an environmental
       temperature of 61 degrees at LAX.

Page   4        PRELIMINARY INVESTIGATION REPORT        DR 90-0525042

During the crime scene investigation it was learned that Sergeant
D. Sebenick #14860 of the Harbor Patrol Division was one of
the first units on the scene.  Sergeant Sebenick arrived at
the scene at approximately 0609 hours and observed a crowd of
people around the victim who was lying on the parkway at the
location.  Approximately one minute later the Fire Department
paramedic unit arrived and began to render medical aid to the
victim who had sustained a gun shot wound to the head.  The
paramedics advised Sergeant Sebenick that the victim would
probably not survive and Sergeant Sebenick requested additional
patrol units to assist with a homicide crime scene investigation.

Harbor Patrol Officers G. Ichikawa #16124 and T. Shannon #26422,
Unit 5X11, responded to the crime scene and assisted Sergeant
Sebenick with securing the area and locating witnesses.  The
officers learned from the witnesses that the victim had been
arguing/fighting with a suspect inside the yard area of the
residence located at 309 Gulf Avenue.

The officers and sergeant responded to the residence at 309
Gulf Avenue where they located several additional witnesses.
At this time Officer Shannon observed a male black exit a rear
sliding glass door and flee the residence on foot.

Officer Shannon subsequently identified this male black as
Markay Lewis, LA #1943420L from booking photo #1249539.

The general crime scene was located within a residential area
which consisted of numerous family dwellings.  These dwelling
ranged from single level single family structures to multi-level
multi-family units.

The immediate crime was located in front of 309 and 315 Gulf
Avenue.  Gulf Avenue extends north and south between "D" Street
to the north and "C" Street to the south.

A pool of blood was observed on the parkway in front of 315
Gulf Avenue which was located 132 feet north of the north curb
of "C" Street and 5.5 feet west of the west curb of Gulf Avenue.

Other items of evidence including a 22 caliber shell casing
were observed and recovered from this immediate area.

NOTE:   For a list of evidence recovered and the
respective locations, refer to the property
report.

Page  5          PRELIMINARY INVESTIGATION REPORT        DR 90-0525042

Scientific Investigation Division Photographer G.Cormany #G8805
responded to the location and photographed the crime scene as
directed.


INTERVIEWS:

On August 30, 1990, at 1130 hours, my partner and I interviewed
Witness Esmeralda Mendez.

Witness Mendez advised that she arrived at the residence located
at 309 Gulf Avenue at approximately 2300 hours (August 29,
1990) with several of her friends who she identified as Christina
(Witness Christina Roman) and Patricia (Witness Patricia Pena).
The witness described the residence as a hangout for gang members
from the Waterfront Piru Blood gang as well as a drug sales
location.  She believed that the residence belonged to or was
being rented by Witness Ade Ogunseye, who she knew by the name
of Reginald.  She observed numerous members of the Waterfront
Piru gang going in and out of the residence that evening.

Witness Mendez advised that later that night (Thursday moring
August 30, 1990) she heard two male voices arguing outside the
residence.  She recognized one of the male voices as that of
the victim who she had observed inside the residence earlier
in the evening.  At that time Witness Ogunseye had referred
to him as Curtis.  The other male voice she recognized as that
of a Waterfront Piru gang member known to her by the moniker
of "V".  The arguing continued for sometime and the witness
stated she could hear other male voices encouraging "V" to fight
and the victim crying, "don't do it, don't do it!" The witness
stated she heard no one other than "V", arguing with the victim.
The arguing continuing at the front of the residence and a short
time later she heard a single shot come from the area to the
front of the residence.  By the time the witness went to the
front of the residence the paramedics were treating the victim
and Witness Ogunseye advised her that Curtis had been shot in
the head.

Witness Mendez also stated that the male black who fled the
residence when the officers arrived, is a Waterfront Piru gang
member known to her by the moniker of "Black".

Witness Mendez viewed booking photo #1249539 and identified
Markay Lewis LA #1943420L as "Black", the Waterfront Piru gang
member who ran from the officers.

Page 6    <u>PRELIMINARY INVESTIGATION REPORT</u>    DR 90-0525042

<u>NOTE</u>:    A query of automated Department sources
revealed that the brother of Markay Lewis,
Vondell Lewis LA #1673261L has a moniker of
"Big V".

Witness Mendez viewed Photo Display Folder "A" which contained
a booking photo of Suspect Vondell Lewis and five similar looking
male blacks.  Witness Mendez identified Suspect Vondell Lewis
as the Waterfront Piru gang member known to her as "V".

On August 31, 1990, at 1430 hours, my partner and I interviewed
Witness Edna Gonzales.

Witness Gonzales advised that she has been living at the
residence located at ▓▓▓▓▓▓▓▓▓▓▓▓ with Witness Ade Ogunseye
for approximately one month.

Witness Gonzales stated that Thursday morning (August 30, 1990)
"A-Day" (Witness Ogunseye) and Curtis (Victim Fairley) got into
a fight and "A-Day" through the Curtis out of the residence.
At this point a Waterfront Piru gang member known to the witness
as "Vondel" started to argue and fight with Curtis also.  She
observed "Vondel" wave a knife at the Curtis and she observed
Curtis throw a bottle at "Vondel".  "Vondel" then left the
residence and returned a short time later armed with a small
handgun.  According to the witness "Vondel" again began to fight
with Curtis in the front and side yards of the residence.  The
witness stated she was standing at the front window of the
residence watching "Vondel" fight Curtis.  The fight continued
out to the sidewalk in front of the residence where it appeared
to the witness that Curtis was "chilling down", but "Vondel"
was getting madder.  At this point the witness observed "Vondel"
remove the handgun from his pocket and shot the Curtis one time.
As Curtis fell to the ground the witness observed the "Vondel"
flee on foot through the houses.

Witness Gonzales viewed Photo Display Folder "A" and identified
Suspect Vondell Lewis as "Vondel" the Waterfront gang member
she observed shoot Victim Curtis Fairley.

LAPD 3.11.20 (7/87)

**STATEMENT FORM**

Tape No.

Wit. No. _1_

Page _1_ of _3_

DR No. _90-052504_

ime _MENDEZ, ESMERALDA_   Date/Time of Interview _8-30-90  1130_   Location of Interview _HARBOR STATION_

_NUNEZ, YVONNE_

Resid. Add.                                    Zip Code       Phone

Bus. Add.                    City             Zip Code       Phone

| Sex | Desc. | Hair | Eyes | Hgt. | Wgt. | DOB 13 | Age | Drivers Lic. No./Other ID | State |
|-----|-------|------|------|------|------|--------|-----|---------------------------|-------|
| F | HIS | BRN | BRN | 5-8 | 140 | | 21 | | |

Interviewing Officer(s) _JOSEPHSON_   Serial No(s) _21999_   Division _SBH_

Other Person(s) Present

Statements. Use first person.    Include who, what, where, when, why and how.

LAST NIGHT I WENT WITH MY GIRLFRIENDS CHRISTINA AND PATRICIA OVER TO CHRISTINA'S BOYFRIENDS HOUSE ON GULF STREET HIS NAME IS KENNY GREEN. KENNY WASN'T HOME SO WE WENT DOWN THE STREET TO REGINALD'S HOUSE. HE LIVES ABOUT TWO HOUSES FROM KENNY'S HOUSE ON GULF STREET

WE WERE KICKING IT IN REGINALD'S HOUSE PARTYING FOR AWHILE. IT WAS ME, CHRISTINA, PATRICIA, REGINALD AND THIS OTHER BLACK GUY WHO WERE ALL IN THE HOUSE. WE GOT THERE AROUND 11:00 PM LAST NIGHT AND STAYED THE WHOLE NIGHT. EARLIER THIS MORNING I HEARD THIS GUY NAMED CURTIS OUT FRONT BANGING ON THE DOOR AND WANTING IN. HE WAS ARGUING WITH THIS GUY NAMED "V" ABOUT SOMETHING. REGINALD WOULDN'T LET HIM IN. I DON'T KNOW CURTIS, BUT I HEARD REGINALD CALL HIM THAT. THERE WERE ALOT OF GANGSTERS FROM THE WATER FRONT PIRU BLOOD GANG OUT FRONT WITH "V" AND CURTIS. ALL THE GUYS AROUND THERE ARE WITH THAT GANG WATER FRONT PIRUS. THERE WAS ALOT OF YELLING AND ARGUING GOING ON OUT IN FRONT. IT SOUND LIKE "V" WAS ARGUING WITH CURTIS ABOUT SHOWING UP THE DOPE ALTHOUGH IT SOUNDED LIKE "V" WAS THE ONLY ONE REALLY FIGHTING WITH CURTIS. THE OTHER GANGSTERS WERE YELLING FOR "V" OR SUPPORTING HIM. THE FIGHT WENT AROUND INTO THE BACKYARD. WE WERE IN THE BACK ROOM OF THE HOUSE AND THE WINDOWS WERE OPEN SO I COULD HEAR BETTER

Los Angeles Police Department

| PAGE NO. 2/3 | TYPE OF REPORT STATEMENT ESMERALDA MENDEZ | | BY | DR NO. | DR NO. 90-0525C |
|---|---|---|---|---|---|

| ITEM NO. | QUAN. | ARTICLE | SERIAL NO. | BRAND | MODEL NO. | MISC. DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VAL. |
|---|---|---|---|---|---|---|---|

I HEARD "V" YELL, "I TOLD YOU I WANT MY
MONEY." THEN I HEARD CURTIS YELL, "DON'T
DO IT, DON'T DO IT." THE FIGHT AND EVERY-
BODY THEN WENT AROUND TO THE FRONT OF
THE HOUSE AGAIN. EM I COULD STILL HERE
THEM ARGUING AND ABOUT 10 TO 15
MINUTES LATER I HEARD A LITTLE
SHOT. IT SOUNDED LIKE A FIRECRAKER.
AFTER THAT CHRISTINA WALKED TO THE
FRONT OF THE HOUSE AND LOOKED OUT
THE WINDOW. SHE CAME BACK AND TOLD
US SOME GUY NAMED EFRON HAD BEEN
SHOT. CHRISTINA WANTED US TO GO
LOOK AND WE DID. BY THE TIME I
LOOKED OUT THE FRONT WINDOW THE
PARAMEDICS WERE THERE AND THE SUN
HAD ALREADY COME OUT. IT GOT DAYLIGHT
FAST.
AROUND THAT TIME REGINALD WENT OUT-
SIDE. THEN THE PARAMEDICS LEFT. REGINA
CAME BACK IN AND TOLD US THAT IT
WASN'T EFRON, BUT CURTIS AND THAT
HE WAS SHOT IN THE HEAD.
I HAVE KNOWN THIS GUY NAMED "V" FOR ABOUT
A MONTH. HE IS A TALL SAMOAN WITH BUSH
AFRO HAIR. HE HAS A MUSTACHE, THIN BUILT
AND AROUND 30 YEARS OLD. HE IS FROM THE
WATER FRONT PIRU GANG. EM
THAT OTHER BLACK GUY RAN OUT THE BACK
DOOR WHEN EM THE POLICE CAME TO THE
FRONT DOOR. I DON'T KNOW HIS NAME.
I THINK THEY CALL HIM "BLACK". THAT PHOTO
YOU SHOWED ME WITH THE NUMBER 1249539 IS
THE GUY THEY CALL "BLACK" WHO RAN OUT THE
HOUSE WHEN THE POLICE CAME.
THERE WAS ALSO A GIRL NAMED "SHORTY" IN THE
HOUSE LAST NIGHT. SHE RAN OUT THE HOUSE
BEFORE "BLACK" DID. "SHORTY" IS A MEXICAN

| PAGE NO. | TYPE OF REPORT | | | | BY NO. | DR NO. |
|---|---|---|---|---|---|---|
| 3/3 | STATEMENT ESMERALDA MENDEZ | | | | — | 90-0525... |

| ITEM NO. | QUAN. | ARTICLE | SERIAL NO. | BRAND | MODEL NO. | MISC. DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALU... |
|---|---|---|---|---|---|---|---|

GIRL AROUND 21 YEARS AND I THINK SHE
LIVES IN THE HOUSE WITH REGINALD

I DON'T GIVE YOU MY REAL NAME THE
FIRST TIME BECAUSE I DIDN'T WANT
MY BROTHER TO FIND OUT WHAT I'VE
GOT MYSELF INVOLVED IN. MY BROTHER
IS A COP FOR LAPD. MY REAL NAME
IS ESMERALDA MENDEZ.

THIS IS A TRUE STATEMENT OF WHAT
HAPPENED LAST NIGHT OR BETTER
THIS MORNING. I HAVE READ THIS
STATEMENT AND AGREE WITH IT.

X Esmeralda Mendez

WHEN I SAID THAT IT WAS ME,
CHRISTINA, PATRICIO, "BLACK" AND
REGINALD IN THE HOUSE I MEANT
AT THE TIME OF THE SHOOTING
EARLIER "V" AND THE REST OF THOSE
GUYS FROM WATER FRONT WERE IN AND
OUT OF THE HOUSE A LOT

X Esmeralda Mendez

LAPD 3.11.20 (7/87)

**STATEMENT FORM**

8. 190
COUNT F077-243
7:56 PM/7:48 PM Page 1 of 3

| Tape No. | | |
|---|---|---|
| Wit. No. 2 | | DR No. 90-0525842 |

| Name GONZALES EDNA | Date/Time of Interview 8-31-90 1430 | Location of Interview HARBOR STATION |

| Sex F | Desc. HISP | Hair BLCK | Eyes BRN | Hgt. 4-11 | Wgt. 120 | DOB | Age 21 | Drivers Lic. No./Other ID | | State |

Interviewing Officer(s) JOSEPHSEN - TIZANO    Serial No(s). 21999 - 21682 SBH Division

Other Person(s) Present

Statements: Use first person.    Include who, what, where, when, why and how.

I WAS AT "A-DAY'S" HOUSE YESTERDAY MORNING WHEN VONDEL SHOT CURTIS. I SAW VONDEL SHOT CURTIS WITH A LITTLE GUN. HE SHOT CURTIS OUT IN FRONT OF THE HOUSE NEXT DOOR TO "A-DAY" HOUSE.

IT ALL STARTED EARLIER WHEN "A-DAY" GOT IN A FIGHT WITH CURTIS AND THREW CURTIS OUT OF THE HOUSE. CURTIS DID NOT WANT TO LEAVE, BUT "A-DAY" THREW HIM OUT ANYWAY. VONDEL WAS FIGHTING WITH CURTIS TOO AND TRYING TO GET CURTIS TO LEAVE TOO. I SAW VONDEL HIT CURTIS A BUNCH OF TIMES. VONDEL GOT A KNIFE AND WAVED IT AT CURTIS AND CURTIS THREW A BOTTLE AT VONDEL. VONDEL RAN HOME AND CAME BACK WITH A LITTLE GUN THAT HE HAD IN A SOCK. VONDEL CAME IN THE HOUSE AND PLAYING WITH THE GUN. POINTING IT AT ME AND EVERYBODY IN THE HOUSE. THERE WERE OTHER PEOPLE IN THE HOUSE, LIKE MY BOYFRIEND "BLACK", THAT'S VONDEL'S BROTHER. "BLACK" WAS IN THE BACK ROOM WITH THIS GIRL NAMED CHRISTINA. CHRISTINA HAS A PATCH OF WHITE HAIR RIGHT IN FRONT. THERE WERE SOME OTHER MEXICAN GIRLS THERE AND "A-DAY" AND ANOTHER BOYFRIEND OF MINE NAMED EFRON. THERE WERE THOSE YOUNGER GUYS FROM WATERFRONT PIRU GANG AROUND IN FRONT OF THE HOUSE TOO.

VONDEL STARTED FIGHTING WITH CURTIS AGAIN IN FRONT OF THE HOUSE AND ON THE SIDE OF THE HOUSE WHERE THE STEPS AND SIDE DOOR IS. I WAS LOOKING OUT THE FRONT WIND

CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 2/3 | TYPE OF REPORT STATEMENT EDNA GONZALES | | B | IG NO. | | DR NO. 90-05250 |
|---|---|---|---|---|---|---|
| ITEM NO. | QUAN. | ARTICLE | SERIAL NO. | BRAND | MODEL NO. | MISC. DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VA |

WATCHING VONDEL FIGHT WITH CURTIS.
EFRON WAS MESSING WITH ME AND TRYING
TO MAKE TIME WITH ME WHILE I WAS
AT THE WINDOW WATCHING. BY THIS TIME
BOTH VONDEL AND CURTIS WERE OUT ON
THE SIDEWALK IN FRONT OF THE
HOUSE NEXT DOOR. VONDEL WAS FARTHER
UP THE STREET AND CURTIS WAS ABOUT
AT THE FRONT CORNER OF "A-DAY'S"
YARD. CURTIS WAS CHILLING DOWN, BUT
VONDEL WAS GETTING MADDER MADDER.
THAT'S WHEN I SAW VONDEL PULL THE
SOCK OUT OF HIS POCKET PULL THE
GUN OUT OF THE SOCK AND POINT
THE GUN AT CURTIS. VONDEL HAD THE
GUN IN HIS LEFT HAND, BECAUSE HIS
RIGHT ARM, I THINK, WAS HURT. I
HEARD VONDEL YELL, "I'LL PUT THIS
THROUGH YOUR FUCKING HEAD!" THEN
VONDEL SAID, "PUNK," AND FIRED
THE GUN. I COULD SEE THE FIRE
FROM THE GUN AND CURTIS FALL
TO THE GROUND. VONDEL RAN OFF
BETWEEN THE HOUSES, GOING AWAY
FROM WHERE "A-DAY'S" HOUSE IS. I
RAN OUT THE BACK OF THE HOUSE.
THERE WERE A BUNCH OF THOSE
YOUNG WATERFRONT GANGSTERS OUT
THERE WHEN THIS HAPPENED, BUT I
ONLY SAW VONDEL HITTING AND CURTIS
AND FIGHTING WITH CURTIS OUT IN
FRONT.

I HAVE READ THIS STATEMENT AND IT'S
CORRECT AS I TOLD DETECTIVES JOSEPHSON
AND TIZANO.

X Edna Gonzales

GRASS

GULF AVE

A-DAY'S HOUSE

X Elra Gonzalez

8-31-90
1:13

Appendix "2"

Court of Appeal
Opinion

NOT TO BE PUBLISHED

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

THE PEOPLE,                        )  No. B059483
                                   )
        Plaintiff and              )  (Super.Ct.No. NA004741)
        Respondent,                )
                                   )
                                   )
                                   )
VONDELL LEWIS,                     )
                                   )
        Defendant and              )
        Appellant.                 )
                                   )

APPEAL from a judgment of the Superior Court of
Los Angeles County.  Richard F. Charvat, Judge.  Affirmed.

Robert Derham, under appointment by the Court of
Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George
Williamson, Chief Assistant Attorney General, Ronald A. Bass,
Assistant Attorney General, Stan M. Helfman and Ronald S.
Matthias, Supervising Deputy Attorneys General, for Plaintiff
and Respondent.

2

Vondell Lewis appeals from the judgment entered following a jury trial which resulted in his conviction of second degree murder with the personal use of a firearm. (Pen. Code, §§ 187, 189, subd. (a), 12022.5, subd. (a).) He contends: "I. The trial court committed reversible error by failing to instruct the jury on voluntary manslaughter as a lesser included offense of murder. II. The court erred in sentencing [appellant] to the upper term on the firearm use enhancement."

Viewed in accordance with the usual rules on appeal (People v. Barnes (1986) 42 Cal.3d 284, 303-304), the evidence established that during the early morning hours of August 30, 1990, appellant, Edna Gonzales and Curtis Fairley were consuming cocaine and beer outside a house belonging to "A-Day." Gonzales, the only eyewitness, stated that she had not slept and had been using cocaine and drinking beer for the previous 24 hours. She also testified that a "problem" between A-Day and Fairley developed and A-Day ordered Fairley off of the property. Fairley refused to leave and he and A-Day argued for approximately one hour. Appellant joined in and also ordered Fairley to leave. When Fairley, who was "loaded" and crying, still refused to leave, appellant, who was "kind of buzzed," struck him. Gonzales could not recall whether appellant or Fairley was the man who brandished a knife, but Fairley picked up and threw a bottle at appellant.

3

Appellant left the area and returned approximately 15 minutes later carrying a sock which apparently contained a gun. Appellant resumed the argument with Fairley, then suddenly ran inside the house, leaving Fairley outside. Inside, appellant appeared angry and pointed the gun at the others present and stated that he would shoot Fairley if Fairley continued "messing" with him. Appellant then went back outside, pointed the gun at Fairley and stated, "I'll put this through your . . . head." Appellant then fired the gun, fatally wounding Fairley. The autopsy revealed recent cocaine use by Fairley and concluded death was caused by a single bullet wound.

Outside the presence of the jury, the following colloquy occurred: "[THE COURT:] With respect to the jury instructions, you both had an opportunity to go over them . . . . [¶] [A]re there any instructions that either of you requested that the court will not be giving? [¶] [DEFENSE COUNSEL]: None, your honor. [¶] [PROSECUTOR]: No, your Honor. [¶] THE COURT: Once again, do you both approve of all the instructions that the court will be giving as modified and supplemented? [¶] [DEFENSE COUNSEL]: Yes, your honor. [¶] [PROSECUTOR]: Yes, sir. [¶] THE COURT: The verdict form will then just be one first degree, second degree, and then the finding of personal use, and then not guilty. [¶] [DEFENSE COUNSEL]: Yes. [¶] [PROSECUTOR]: Yes."

4

During argument, appellant's counsel asserted that, because Gonzales had been "drinking beer and smoking cocaine" for most of the night before the shooting, she was not credible. Counsel indicated that Gonzales' perceptions had not been accurate and that she was mistaken when she stated that appellant shot Fairley.

The court sentenced appellant to prison for 15 years to life, then imposed the upper term of five years for use of a firearm. The court stated, "Reason for the upper term is the court has considered the factors in aggravation here showing that the planning with which the crime was carried out indicates premeditation. [¶] [Appellant] has engaged in a pattern of violent conduct which indicates a serious danger to society, starting off with his juvenile history, October 1980, charged with murder, convicted of voluntary manslaughter. [¶] And his adult record indicates that his prior convictions also are numerous or of increasing seriousness. 1985, 1987, 1988, and 1989. . . . [¶] And his prior performance on parole or probation has been unsatisfactory. [¶] Circumstances in mitigation, there are none. [¶] Court finds the factors in aggravation outweigh the factors in mitigation and warrant the court's imposition of the upper term on the special allegation."

The contention that the trial court committed reversible error by failing to instruct the jury on voluntary manslaughter is without merit. The evidence did not warrant a

5

sua sponte instruction on manslaughter because there was no substantial evidence that the crime was other than murder. (Cf. People v. Johnson (1978) 81 Cal.App.3d 380, 386.)  Also, appellant's counsel expressly stated that instructions regarding lesser included offenses were not required.  During argument, appellant relied on the theory that the prosecution's eyewitness had mistakenly identified appellant as the killer. Under these circumstances, there was no error in failing to give a voluntary manslaughter instruction.  If error did occur, it was invited.  (People v. Cooper (1991) 53 Cal.3d 771, 831.)

The contention that the trial court erred in stating inappropriate reasons for imposition of the upper term for appellant's use of a firearm is also without merit.  Appellant correctly observes that the upper term for firearm use must be based on factors related to that use.  Review of the record establishes that appellant's planning of the crime included, and related directly to, his use of a gun.  (Cal. Rules of Court, rule 428(b).)  A single circumstance in aggravation is

6

sufficient and the court's stated reason adequately supports

the upper term.   (<u>People</u> v. <u>Piceno</u> (1987) 195 Cal.App.3d 1353,

1360.)

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ORTEGA, J.

We concur:

SPENCER, P.J.

VOGEL, J.

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, _____VONDELL L. LEWIS_____, declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

    _____VONDELL LEWIS____, CDCR #: _E-95977____
    CORRECTIONAL TRAINING FACILITY·
    P.O. BOX 689, CELL #: _GW-307____
    SOLEDAD, CA  93960-0689.

    On _August 5, 2007_____, I served the attached:

_____PETITION FOR WRIT OF HABEAS CORPUS_____

_____WITH EXHIBIT "A" & APPENDIX "1" & "2"._____

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:

  Department of Justice-State of California

  Office of the Attorney General

  110 West A Street, suite 1100
  San Diego, California  92101
  Attn: Cynthia Lumely

    I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on ___8-05-2007_____.

                        _Vondell L. Lewis_____

                        .VONDELL L. LEWIS-PETITIONER
                        Declarant

VONDELL L. LEWIS
#E-95977/GW-307
P.O. Box 689
Soledad, CA  93960-0689


            IN THE COURT OF APPEAL SECOND DISTRICT

            OF CALIFORNIS; DIVISION ONE


IN re VONDELL L. LEWIS,                Case No. BH004281
                                       Sup. Ct.
    on Habeas Corpus.
                                       **LODGMENT OF PAROLE**

                                       **HEARING TRANSCRIPT**

                                       **("H.T.")**. Pages 1-82:


    TO THE HONORABLE JUDGES:

    Petitioner respectfully Lodges the **Parole Hearing Transcript**

(H.T.) in the above-entitled case for an entire and complete

review of the case.

    Petitioner respectfully request this copy be returned upon

the completion of review in this case. All references to (H.T.)

pertain to this hearing transcript.


Dated: August 5, 2007                  Respectfully submitted,


                                       _____

                                       VONDELL L. LEWIS-PETITIONER

ATTORNEY GENERAL
SAN DIEGO

2007 AUG -9  AM 9: 15

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS


In the matter of the Life )
Term Parole Consideration )
Hearing of: )          CDC Number E-95977
                           )
VONDELL LEWIS             )          INMATE
                           )          COPY
_____)

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

MAY 5, 2006

9:28 A.M.



PANEL PRESENT:

Mr. Jack Garner, Presiding Commissioner
Ms. Noreen Blonien, Deputy Commissioner


OTHERS PRESENT:

Mr. Vondell Lewis, Inmate
Mr. Lawrence Morrison, Deputy District Attorney
Correctional Officers Unidentified



CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____    No      See Review of Hearing
_____    Yes     Transcript Memorandum



P. M. LaChapelle, Peters Shorthand Reporting

ii

## INDEX

|  | PAGE |
|---|---|
| Proceedings | 1 |
| Case Factors | 11 |
| Pre-Commitment Factors | 23 |
| Post-Commitment Factors | 47 |
| Parole Plans | 41 |
| Closing Statements | 63 |
| Recess | 72 |
| Decision | 73 |
| Adjournment | 81 |
| Transcriber Certification | 82 |

--oOo--

1

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | PRESIDING COMMISSIONER GARNER:    All |
| 3 | right, this is a Subsequent Parole Consideration |
| 4 | Hearing for Vondell, V-O-N-D-E-L-L, Lewis, L-E- |
| 5 | W-I-S, CDC Number E like Edward 95977.    The date |
| 6 | today is May 5, 2006.    It is 9:28 a.m. and we're |
| 7 | at the Correctional Training Facility in |
| 8 | Soledad.    The inmate was received on May 14, |
| 9 | 1991 from Los Angeles County.    The offense was |
| 10 | murder in the second degree with use of a |
| 11 | firearm, Case Number N like Nora, A like Adam, |
| 12 | 004741, Count Number One, 187 in the second, |
| 13 | with 12022.5(a).    The term was 15 years to life |
| 14 | plus five.    Minimum eligible parole date was |
| 15 | September 30, 2003.    This Hearing is going to be |
| 16 | tape recorded.    For purposes of voice |
| 17 | identification, each of us at the table is going |
| 18 | to be required to give our first name, last |
| 19 | name, spelling the last name, and when we get to |
| 20 | you, Mr. Lewis, if you'd also give us your CDC |
| 21 | Number, please.    I'll start and go to my left. |
| 22 | I'm Jack Garner, G-A-R-N-E-R, Commissioner. |
| 23 | DEPUTY COMMISSIONER BLONIEN:    I'm Noreen |
| 24 | Blonien, B-L-O-N-I-E-N.    I'm a Deputy |
| 25 | Commissioner. |
| 26 | DEPUTY DISTRICT ATTORNEY MORRISON: |
| 27 | Lawrence Morrison, M-O-R-R-I-S-O-N, San Luis |

2

1    District Attorney.

2        INMATE LEWIS:  Vondell Lewis, E-95977.

3        PRESIDING COMMISSIONER GARNER:  All

4    right, Mr. Lewis, I do have the BPT 1073 that

5    you signed on April 22, 2005.  And you noted

6    that you don't need any help with the Parole

7    Hearing and also there were no disabilities

8    identified from the File review.  And let me ask

9    you now, is there anything that's occurred to

10   you since April of last year that we need to

11   provide accommodation for today?

12       INMATE LEWIS:  No, sir.

13       PRESIDING COMMISSIONER GARNER:  And are

14   you on any medications?

15       INMATE LEWIS:  Just asthmatic medication.

16       PRESIDING COMMISSIONER GARNER:  Okay.

17   You all current with those?

18       INMATE LEWIS:  Yes, sir.

19       PRESIDING COMMISSIONER GARNER:  Okay.

20   So, there's no ADA issues that are unresolved?

21   ADA issues?

22       INMATE LEWIS:  No.

23       PRESIDING COMMISSIONER GARNER:  Okay.

24   All right before we start the outline of the

25   Hearing procedure, I want to put on the record

26   that we did meet with you yesterday, which would

27   have been May 4, 2006 concerning your request to

3

1   withdraw from your previous indication that you

2   wished to be represented by legal counsel.

3   Commissioner Blonien has just shown me a

4   document that was sent to the Board of Parole

5   Hearings indicating that it was your wish to

6   represent yourself.  Is that correct?

7           INMATE LEWIS:  yes, sir.

8           PRESIDING COMMISSIONER GARNER:  Okay.

9   And for the record, I do note that your grade

10  point level is 12.9, and is there any additional

11  documents that you've come across Commissioner

12  Blonien that would be appropriate to have on the

13  record before we proceed?

14          DEPUTY COMMISSIONER BLONIEN:  He's not a

15  member of Triple CMS.  I think he's quite able

16  to represent himself today.

17          PRESIDING COMMISSIONER GARNER:  All

18  right, I think we're in a position that we can

19  go ahead and proceed.  And we'll start with the

20  outline of the Hearing procedures.  This Hearing

21  is being conducted pursuant to Penal Code

22  sections 3041 and 3042 and the rules and

23  regulations of the Board of Parole Hearings

24  governing Parole Consideration Hearings for life

25  inmates.  The purpose of today's Hearing is to

26  consider your suitability for parole.  In doing

27  so, we will consider the number and nature of

4

1    the crimes you were committed for, your prior

2    criminal and social history, and your behavior

3    and programming since you're commitment. We've

4    had the opportunity to review your Central File

5    and your prior Hearing transcript. You'll be

6    given an opportunity to correct or clarify the

7    record. We'll consider your progress since your

8    commitment and since your last Hearing. Your

9    updated counselor's report and psychological

10    report will also be considered. Any change in

11    your parole plans should be brought to our

12    attention.

13    We will reach a decision today and inform you

14    whether or not we find your suitable for parole

15    and the reasons for our decision. If you're

16    found suitable for parole, the length of your

17    confinement will be explained to you.

18    This Hearing will be conducted in two phases. I

19    will discuss with you the crimes you were

20    committed for, your prior criminal and social

21    history, your parole plans and any letters of

22    support or opposition that may be in the File.

23    Commissioner Blonien will discuss with you your

24    progress since your commitment, your counselor's

25    report and your psychological evaluation. Once

26    that's concluded, the Commissioners and the

27    District Attorney will be given an opportunity

5

1   to ask you questions.  The questions from the

2   District Attorney will be asked through the

3   Chair, and you should direct your answers back

4   to the Panel.

5   Before we recess for deliberations, the District

6   Attorney and you will be given an opportunity to

7   make a final statement regarding your parole

8   suitability.  Your statement should be directed

9   to why you feel you're suitable for parole.

10   The California Code of Regulations states that

11   regardless of time served, a life inmate shall

12   be found unsuitable for and denied parole if, in

13   the judgment of the Panel, the inmate would pose

14   an unreasonable risk of danger to society if

15   released from prison.

16   Mr. Lewis, you have certain rights.  The rights

17   included a timely notice to the Hearing, the

18   right to review your Central File and the right

19   to present relevant documents.  And I'd ask you

20   at this time, have those rights been met, sir?

21        INMATE LEWIS:  Yes.

22        PRESIDING COMMISSIONER GARNER:  All

23   right.  You also have a right to be heard by an

24   impartial Panel today.  The Panel will consist

25   of myself and Commissioner Blonien.  Any

26   objection to the Panel?

27        INMATE LEWIS:  No objection.

6

1      PRESIDING COMMISSIONER GARNER:    All

2  right.  Then a copy of our tentative decision

3  and a copy of the transcript of will be sent to

4  you.  Now, Mr. Lewis, you recall from previous

5  Boards in May of 2004, the appeal procedures

6  changed, which now require any appeal of a Board

7  decision to go through the Courts.

8      INMATE LEWIS:  Yes, sir.

9      PRESIDING COMMISSIONER GARNER:    All

10  right.  You're not required to admit your

11  offence or discuss your offense if you do not

12  wish to do so.  However, this Panel does accept

13  as true the findings of the Court, and you're

14  invited to discuss the facts and circumstances

15  of the offense if you desire.  The Board will

16  review and consider any prior statements you've

17  made regarding the offense in determining your

18  suitability for parole.

19  At this time, I'll ask Commissioner Blonien if

20  there's confidential material in your File and

21  if we'll be using it at the hearing today?

22      DEPUTY COMMISSIONER BLONIEN:  There is

23  confidential information in his File but nothing

24  that we'll be using today.

25      PRESIDING COMMISSIONER GARNER:  Okay,

26  thank you.  Mr. Lewis, in front of you, I placed

27  the Hearing Checklist.  And you did get a