VONDELL L. LEWIS
#E-95977/GW-307
P.O. Box 689
Soledad, CA 93960-0689



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

VONDELL L. LEWIS,

           Petitioner,

vs.

BEN CURRY, WARDEN,

           Respondent.

C 07-05976 TEH (PR)

**TRAVERSE TO ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**

Judge: Honorable Thelton E. Henderson

As a **Traverse** to the Answer to the Petition for Writ of Habeas Corpus filed by Warden Curry, Petitioner, admits, alleges, and denies that:

1. Petitioner alleges that Warden Curry has unlawfully kept petitioner restraint following a presumed correct conviction of second degree murder with fire-arm use enhancement on April 1, 1991. (Pet. at 2.) Petitioner was sentenced to 15 years to life, plus 5 year enhancement. (Id.)

2. Petitioner admits, that in 2006 he filed a petition for writ of habeas corpus in Los Angeles County Superior Court, alleging that the Board of Parole Hearings' (Board) 2006 decision denying parole violated his due process rights. (Answer

1.

1   Ex. 1, Super. Ct. Pet.; Ex. 2, Superior Ct. Order.) The Superior
2   court denied the petition, finding that "the record contains
3   'some evidence' to support the Board's finding that petitioner
4   is unsuitable for parole. " (Ex. 2 at 1.)

5   3. Petitioner admits that he then raised the same claims in
6   petitions to the California Court of Appeal and the California
7   Supreme Court. (Answer Ex. 3, Ct. App. Pet.; Ex. 4, Ct. App.
8   Order; Ex. 5, Sup. Ct. Pet.; Ex. 6, Sup. Ct. Order.) Both
9   petitions were summarily denied. (Ex. 4; Ex. 6.)

10   4. Petitioner admits that he has exhausted  his state court
11   remedies regarding the claim that the Board's 2006 decision
12   violated his due process rights. Petitioner further alleges
13   that the Board has knowingly considered and relied on false
14   information/evidence and that this claim has been exhausted
15   in the state courts. Specifically, that the district attorney's
16   representative has submitted inaccurate and unproven hearsay
17   statement to the Board of Parole Hearings to use at all of the
18   suitability hearings of Petitioner.

19   5. Petitioner admits that the Petition is timely under 28 U.S.
20   C. § 2244(d)(1) and that the Petition is not subject to any
21   other procedural bar. Petitioner alleges that a federal question
22   is present when the Board uses factual determinations about the
23   crime that were not alleged and found true by the trier of fact,
24   be it by jury or by defendant's own admission of facts in a plea
25   of guilty.(See Apprendi v. New Jersy, 530 U.S. 466 (2000);
26   Blakely v. Washington 542 U.S. 296 ( (2004). Petitioner alleges
27   that the Board has circumvented his Sixth Amendment right to
28   confront adverse witnesses by use of hearsay statements.

2.

6. Petitioner alleges that he is entitled to federal habeas relief under 28 U.S.C. ; 2254 because the state courts decision were either contrary to, or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or based upon  an unreasonable determination of the facts.

7. Petitioner alleges that he has a federally protected liberty interest in parole and, therefore, alleges that this court has jurisdiction. Under U.S. Supreme Court authority  in Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,  442 U.S. 1 (1979) and; Board of Pardons v. Allen, 482 U.S. 369 (1987),the Supreme Court established clearly the framework of how the state creates a liberty interest.The Ninth Circuit has clearly established several times that California's parole scheme gives rise to a cognizable liberty interest in release on parole. (See McQuillion v. Duncan, 306 F.3d 896, 900 (2003); Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).)

8. Petitioner alleges that he was denied due process under clearly established federal law when then Board's statement  of reasons exceeded the statutory and regulatory requirements for refusing a parole release dated.

9. Petitioner alleges that the Board's 2006 decision has violated his federal due process rights. Although the Board may use hearsay in the parole context, it may not make factual determinations about the crime based upon hearsay, and the hearsay must have 'some indicia of reliability.' McQuillion,

306 F.3d at 904; Biggs, 334 F.3d at 915; see also Jancsek v.

Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987)

(adopting for parole determinations the "some evidence" stand-

ard set forth in Superintendent, Mass. Corr. Inst. v. Hill,

472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). Under

rules governing section 2254 cases, Rule 7. Expansion of the

Record. Petitioner submits a sworn notarized declaration from

**Esmeralda Mendez** to be considered  as proof  of the unreliablity

of the hearsay statement of **Mendez relied on** by the Board and

the Superior Court in making their findings.  Petitioner has

now offered proof of his innocence of certain hearsay statements

contained within the prison file which is alleged was used by

the Board in it's denial of parole and which was used by the

state court's in their decisions denying petitioner's petitions

for writ of habeas corpus.

10. Petitioner alleges that an evidentiary hearing may be

necessary if after respondents' review of **Mendez'** affidavit

respondent chooses to deny its correctness. (See attachment

"A" Declaration of Esmeralda Mendez.)

11. Petitioner alleges that due process 'is flexible and calls

for such procedural protections as the particular situation

demands.' Greenholtz, 442 U.S. at 12; Pedro v. Oregon Parole Bd.,

825 F.2d 1396, 1398 (9th Cir. 1987).

12. Petitioner alleges he has stated and established several

grounds for habeas corpus relief.

13. Except as expressly admitted in this **Traverse**, Petitioner

denies all allegations of the answer.

4.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Petitioner seeks federal habeas corpus relief from the Board's decision finding him not suitable for parole on the ground that the Board based their decision on false information in violation of due process. Petitioner also challenges the state court's denial of his petition based on hearsay statements as based upon an unreasonable determination of the facts in light of the evidence presented.

### ARGUMENT I.

**PETITIONER HAS ALLEGED AND CAN SHOW THAT HE IS ENTITLED TO RELIEF UNDER AEDPA.**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) a federal court may not grant a writ of habeas corpus unless the state court's adjudication was either: 1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) "based on an unreasonable determination of the facts in light of the evidence presented at the States Court proceeding." 28 U.S.C. § 2254(d)(1-2). Petitioner has alleged that certain information contained within the prison file is false and prison officials have acknowledged that it is in the file, said they would review it during their deliberation in the mist of the parole hearing. (See Answer Ex. 3, Part 2 of 2, pp. 7-10, 62-72.) Petitioner has also alleged that the Los Angeles Superior Court based its findings on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding. (see generally Pet.)

5.

**A. Petitioner has alleged and can show that the State Court Decisions was Contrary to Clearly Established Federal Law.**

Respondent acknowledges that Supreme Court authority exists in Greenholtz. Petitioner asserts Board of Parole v. Allen, 482 U.S. 369, also clearly establishes federal law in parole Due Process rights. It has been determined that the California parole statute, Penal Code § 3041, uses mandatory language and is virtually identical to the language and schemes used in Allen and Greenholtz, thereby creating a protected liberty interest in release in on parole. Mc Quillion, supra, 306 F.3d at 902.

The statutory language of California Penal Code § 3041 creates a presumption of parole suitability, which then shifts the burden to the state to prove by a preponderance of the evidence that the inmate fits within the §3041(b) "public safety" exception to the mandatory duty to set a parole date.

Respondent seems to claim that the Board can make findings regarding the facts of the crime, beyond any findings made by the trier of fact in the court of conviction, to take the case out of the presumptive sentencing range. **Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004).** The Board has in its files information showing state representative committed perjury in the state courts, and Board members have acknowledged that the documents are in the file, but failed to do anything, and said they would rely on it. (Answer Ex. 1, Preliminary hearing transcript pp. 8, 14; compare Ex. 1, Trial transcript pp. 139-141, 145-146.) Detective Josephson lied in court about his interviews with witnesses and prepared the police reports being relied on by the Board and State Courts.

6.

1    Respondent dodges the issue of false evidence in the records,
2    and tries to claim they have not been exhausted. Petitioner has
3    the due process right to make sure the information being used is
4    accurate and reliable. (See Greenholtz, 442 U.S. at 13.) Here,
5    Petitioner disputed certain factual determinations in the mist
6    of the parole hearing, petitioner told the Board they were
7    false. (see Answer Ex. 3, Part 2 of 2, pp. 12, 1857, 62-65, 66-
8    69.) The Board acknowledged they had " So, we got it" "And for
9    the record, I'll review it during deliberations also." (Answer
10   Ex. 3, Part2 of 2, p. 69.) The Board told me they were going to
11   review the records during deliberations, respondent claims to
12   the contrary is rebutted.

13    Under Greenholtz, "The function of legal process, as that
14   concept is embodied in the Constitution, and in the realm of
15   factfinding, is to minimize the risk of erroneous decisions.
16   Because of the broad spectrum of concerns to which the term must
17   apply, flexibility is necessary to gear the process to the
18   particular need; the quantum and quality of the process due in
19   a particular situation depend upon the need to serve the purpose
20   of minimizing the risk of error." (Greenholtz, 442 U.S. at 13)

21    The Board and Superior Court has relied on the police report
22   and detective Josephson's statements and information therein to
23   expand the facts of the convicted crime, petitioner claims they
24   arefalse and has obtain a sworn declaration from Esmeralda Mendez
25   in support of the unreliability of her written statement within
26   the police report. (See Attachment "A".) The Board's action are
27   clearly contrary to the principles established in Green Holtz
28   and Allen.

7.

Petitioner request the that the Court look to California law "to determine the findings necessary to deem a prisoner unsuitable for parole." (Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007)). Then petitioner request the Court review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' ... constituted an unreasonable application of the'some evidence' principle.'. (Id. at 851.)

Under that rubric, the "findings necessary to deem petitioner unsuitable for parole . . . are not that a particular factor or factors indicating unsuitability exist, but **that a prisoner's release will unreasonably endanger public safety.**" ( In re Singler, 73 Cal.Rptr.3d 864, 874 (Cal.App. 3Dist. 2008)).

**B. PETITIONER Has alleged and can show that the State Courts Unreasonably applied Clearly Established Federal Law.**

Respondent argues that petitioner only has due process rights under Greenholtz. Nowhere has respondent mentioned, Superintendent v. Hill, supra, 472 U.S. 445, (the "some evidence" standard for parole determinations.)

The Board's decision to deny Petitioner parole was based on several factors. First, the commitment offense; the fact that Petitioner was found guilty of shooting an unarmed person after arguing over drugs and therefore, killing him with no motive; second, Petitioner's previous criminal history; and finally Petitioner's alleged unstatable relationship with others. (see Answer pp. 6-7; Ex. 2, pp. 1-2.) What respondent omits is that, these alleged facts are misleading, unreliable, and unproven.

8.

1    The Superior Court found "some evidence" to support the Board
2    finding that the offense was carried out in a dispassionate and
3    calculated manner. Relying on the alleged fact that "Petitioner
4    shot the unarmed victim during an altercation over drugs. Prior
5    to the incident, petitioner told the victim ... 'get out of my
6    house,and if you come back, I'll shoot in the neck ...'" (See
7    Answer Ex. 2, p. 1; and compare Ex. 3, Part 2 of 2, p. 64; See
8    also Answer Ex. 1, "Follow-Up Investigation report p. 3 the
9    statement of Witness Rudy Roldan interviewed on September 7,
10   1990.)   What we have is district deputy attorney Morrison using
11   quotes from witness Roldan contained within the police reports,
12   that were never before the trier of fact, then these quotes are
13   used by the Superior Court to based their decision on to deny
14   relief in the state courts.(Id. Ex. 2; Ex. 3; Ex. 1.) Witness
15   Rudy Roldan **did not testify to these alleged facts in court at**
16   **petitioner's criminal trial.**

17   The Superior court found there was **NO** evidence to support
18   the Board's finding that "the offense was carried out in manner
19   which demonstrates an exceptionally callous disregard for human
20   suffering." Additionally, finding the crime petitioner committed
21   was the "minimum necessary to commit his crime, one shot to the
22   victim's head." (Answer Ex. 2, p. 1) Petitioner was also found
23   to have "checking on the victim and summoning aid.) (Id.)
24   The Superior court found "some evidence" supported the Board's
25   finding that the motive was "inexplicable in relation to the
26   offense." Basically, that the victim was unarmed and there was
27   an argument apparently over drugs. (Answer Ex. 2, p.2.)

9.

1   The only evidence in the records about an argument over drugs
2   is from **Witness Esmeralda Mendez** (SeeAnswer Ex. 1, Preliminary
3   Investigation report,see,Written statement of **Mendez** p.1.), and
4   petitioner (See Answer Ex. 3, part 2 of 2, p.13-21.) the context
5   in which these admissions were made are in no way indicative
6   of support petitioner's guilt of shooting Mr. Fairley. In fact,
7   Mendez's sworn declaration attesting to petitioner's innocence
8   is corroboration supporting petitioner claims before the Board
9   panel. In **No way** can the Board twist the words of **Mendez and**
10  **Petitioner** to support their finding of "some evidence" the
11  motive for the crime was inexplicable.(See Attachment "A".)

12  The other two factors mentioned by the Superior Court are a
13  "previous record of violence" and "history of unstable relation-
14  ships with others," each and every factor relied by the Board
15  and Superior court are **immutable factors**, none are support by
16  "some evidence" that petitioner's release on parole currently
17  poses an unreasonable risk to public safety. (See **In re Singler**,
18  supra, 73 Cal.Rptr.3d at 877-878)(quoting **In re Rosenkrantz**,
19  (2002) 29 Cal.4th 616, 683, 128 Cal.Rp6tr.2d 104, 59 P.3d 174.)
20  Reliance on such immutable factors 'without regard to or con-
21  sideration of subsequent circumstances' may be unfair, and 'runs
22  contrary to the rehabilitative goals espoused by the prison
23  system and could result in a due process violation.' (See **In re**
24  **Scott**(2005) 133 Cal.App.4th 573, 591, 594-595.)

25  In short, respondent has no justifiable explanation for their
26  actions in this case except there is no Clearly established
27  Federal law prohibiting the use of hearsay. Petitioner submits
28  respondent has violated clearly established federal law, based

10.

1   on Supreme Court authority in **Greenholtz, Allen, and Hill.** The
2   Board and Superior court violated petitioner's right and their
3   actions are an unreasonable application of Federal Law.

4   Petitioner submits a copy of petitioner's recent hearing held
5   on May 7, 2008, the Decision consisting of (10) pages attached
6   to the traverse as (Attachment "B".).

7

8   **C. Petitioner has alleged and can show that the State Courts**
9   **Decisions were based on an unreasonable determination of**
10   **the facts.**

11   The Superior court relied on the hearsay out-of-court written
12   statements of **Rudy Roldan and Esmeralda Mendez** to base their
13   factual finding on. (See Ex. 2; compare Ex. 1.) Petitioner has
14   submitted a sworn declaration from **Esmeralda Mendez** under Rule
15   7, governing Habeas corpus under 28 U.S.C. § 2254, to rebut
16   the presumption of correctness by clear and convincing evidence.
17   28 U.S.C. § 2254 (e)(1).

18   The elements of Rudy Roldan statements have not been found
19   true by the trier of fact, the elements of Esmeralda Mendez's
20   statements have not been found true by the trier of fact. How
21   can these people be used to keep petitioner in prison? How can
22   a court of law make factual finding not supported by these two
23   people's in court testimony? The factual determinations by the
24   Board and Superior Court have not been proven in a court of Law,
25   and cannot be used to find "some evidence" petitioner poses a
26   threat to public safety. The petitioner requestfully, request
27   the court **Grant** relief in this case as justice calls for.

28

## CONCLUSION

In **Hayward v. Marshall,** 512 F.3d 536, 545-547, the Ninth Circuit emphasized that "the unchanging factor of the gravity of the commitment offense had no predictive value regarding his suitability for parole." Id. at 546. Here, the Board's reliance on unchanging factors is similarly insufficient to justify parole denial. See id. at 545 (Attachment "B" Recent Board Decision pp. 1-10.) In assessing whether some evidence indicates a parolee's release "unreasonably endangers public safety," the Court should view the evidence "fairly and in its context." **Hayward, 512 F.3d at 544.**

Just because some evidence exist of a particular California Code of Regulations factor applied by the Board to decide if petitioner is suitable for parole "does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety." **Hayward,** 512 F.3d at 543.

The use of hearsay and the unchanging factors viewed in the context of the overwhelming evidence that Petitioner is rehabilitated, does not establish that Petitioner's release unreasonably endangers public safety. As a result, the Board and Superior Court's conclusion that Petitioner is unsuitable for parole is an unreasonable application, contrary to, and an unreasonable determination of the facts under clearly established Federal Law. Therefore, Petitioner request the Court Grant any relief the Court deems just and fair.

Dated: 7/3/2008

Submitted by,

Vondell L. Lewis/Pro Se

12.

Attachment " A !!

Declaration of Esmeralda Mendez

Attachment "A"

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

_____
Signature of Document Signer No. 1

_____
Signature of Document Signer No. 2 (if any)

State of California

County of _Los Angeles_

Subscribed and sworn to (or affirmed) before me on this

_4th_ day of _April_ , 20 _08_ , by
  Date                    Month              Year

(1) _Esmeralda Mendez_ ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)

(and

(2) _____ ,
                    Name of Signer

proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

Signature _____
                    Signature of Notary Public

TED VAUGHN
COMM. #1581053
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jun. 19, 2009

TED VAUGHN
COMM. #1581053
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jun. 19, 2009

Place Notary Seal Above

— OPTIONAL —

*Though the information below is not required by law, it may prove
valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _Declaration_

Document Date: _4/4/2008_ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

1    **DECLARATION OF ESMERALDA MENDEZ**

2

3    I, Esmeralda Mendez, declares as follows:

4    1. I was interviewed by police on August 30, 1990 about the

5    shooting of Curtis Fairley in front of 309 and 315 Gulf Avenue.

6    2. I was inside the residence location of 309 Gulf Avenue

7    with my friends Patricia Pena and Christina Roman and others

8    partying.

9    3. I did not see Vondell Lewis with a gun or pointing a gun

10   or making any statements about shooting anybody inside of the

11   house at any time. **Vondell Lewis** did not point a gun at me.

12   4. During the early morning hours of August 30, 1990 I heard

13   a gun shot. After hearing the gun shot I went to the window to

14   look and I saw the paramedics. I did not see who did the shoot-

15   ing.

16   5. A person I knew as "Black" was with my friend Christina he

17   ran out the back of the house when the police came.

18   6. No defense attorney or defense investigator ever interview-

19   ed me or asked me to be a defense witness. If I was called to

20   testify at Vondell Lewis' trial I would and could have testified

21   to Vondell Lewis' innocence of pointing a gun at me inside of

22   the house and of making statements about shooting someone while

23   inside the house.

24   I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE

25   AND CORRECT AND EXECUTED THIS    $April\ 4,$ _____ 2008 IN THE

26   STATES OF CALIFORNIA.

27   
     TED VAUGHN
     COMM. #1591053
     NOTARY PUBLIC·CALIFORNIA
     LOS ANGELES COUNTY
     My Comm. Expires Jun. 19, 2009

28
                                                    ESMERALDA MENDEZ

     See attached

Attachment "B"

Recent Board Decision
May 2008

Attachment "B"

1            **CALIFORNIA BOARD OF PAROLE HEARINGS**

2                      **D E C I S I O N**

3            **PRESIDING COMMISSIONER ANDERSON:**   Good to go?

4            **INMATE LEWIS:**   Yes, sir.

5            **PRESIDING COMMISSIONER ANDERSON:**   The time is

6       ten after ten.   In the matter of Vondell Lewis, CDC

7       number E-95977, this Panel reviewed all information

8       received from the public and relied on the following

9       circumstances in concluding that the prisoner is not

10      suitable for parole and would pose an unreasonable risk

11      of danger to society or a threat to public safety if

12      released from prison.   We based our decision on several

13      factors.   And starting with number one, the commitment

14      offense, the commitment offense was carried out in an

15      especially cruel and callous manner in the fact that you

16      got involved in an argument with an individual, the

17      victim, and left the scene, returning with a weapon, and

18      shot an unarmed man in the head, which caused his death.

19      At the time, I believe the offense was also carried out

20      in a dispassionate and calculated manner in the fact

21      that, again, an unarmed man was shot in the head during

22      an argument.   The offense was also carried out in a

23      manner which demonstrated an exceptionally callous

24      disregard for human suffering.   After the victim was

25      **VONDELL LEWIS    E-95977      DECISION PAGE 1      5/7/08**

1    shot, he was left on the ground, no aid was rendered.

2    Matter of fact, Mr. Lewis said that he saw a victim with

3    a hole in his head and left the scene.  Motive for the

4    crime was very trivial in nature.  The victim and the --

5    Mr. Lewis had been involved in a physical altercation,

6    but the victim did not have the weapon.  The victim was

7    shot, which is very trivial in nature.  The conclusion

8    was drawn from the Statements of Facts.  I want to --

9    the Statements of Fact that I used were -- I want to

10   incorporate by reference the appellate court decision,

11   page 2 and page 3.  I want to incorporate by reference

12   the August 2002 Board Report, page number 1 and number

13   2, for the conclusions.  And what happened at this crime

14   is that, "At about 6:00 a.m. on August 30th, 1990, the

15   victim, Curtis Farley, and Lewis were standing on the

16   sidewalk in front of a residence when he began a verbal

17   argument, which escalated into a physical altercation.

18   And the witness said Lewis removed a small handgun from

19   his pants pocket, fired one round, striking Curtis

20   Farley in the head.  As Curtis Farley fell, Lewis fled

21   the scene.  The victim, Farley, was transported to the

22   hospital and died the same evening.  Both Lewis and

23   Farley were associates -- known to associate with the

24   Waterfront (indiscernible) Gang."  This crime was one

25   **VONDELL LEWIS   E-95977       DECISION PAGE 2      5/7/08**

1    where -- involved drug use by Mr. Lewis.  He admitted
2    that.  Cocaine as well.  Had used marijuana on a number
3    of occasions.  He was also -- in drawing off this --
4    with respect to the factors involved in the commitment
5    offense, there was extensive criminal history and the
6    fact that Mr. Lewis had been convicted of manslaughter,
7    had used a gun before, and that played a role in this
8    Panel's ability to make a decision in this area.  I do
9    find, and we'll discuss that later, that there's a lack
10   of insight on Mr. Lewis' part.  One of the statements,
11   Mr. Lewis, you made was that you don't have to admit to
12 · the crime to receive a date.  And that's very true.  You
13   don't have to admit to the crime to receive a date.  But
14   one of the declarations that I gave you during my
15   opinion statement was that the California Code of
16   Regulations states that, regardless of time served, a
17   life inmate shall be found unsuitable and denied parole
18   if, in the judgment of the Panel, the inmate would pose
19   an unreasonable risk of danger to society if released
20   from prison.  And part of that decision is coming to
21   being insightful about the crime itself.  With respect
22   to your previous record, we've discussed your previous
23   record and that's into the record.  You have on
24   occasions -- one occasion killed an individual.  You
25   **VONDELL LEWIS   E-95977   DECISION PAGE 3   5/7/08**

1    were 14 years old.  Again, you admitted at the time of

2    14 years old you'd already been involved in drugs.  You

3    shot a man.  You were committed to the CYA, California

4    Youth Authority, in 1/27/1981 and discharged on

5    6/9/1987.  You have a record -- this established record

6    of violence on your behalf.  You have an escalating

7    pattern of criminal misconduct.  You have a history of

8    unstable relationships.  You associated yourself with

9    people -- known drug users, including yourself.  You

10   went to -- you had a good thing that happened in your

11   life.  You received a scholarship as the result of

12   learning how to play basketball in the CYA.  You lost

13   that scholarship because of your drug use.  A tragedy.

14   You failed previous grants of probation.  You also

15   failed to profit from society's previous attempts to

16   correct your criminal behavior.  You had juvenile

17   probation, you've had adult probation, and you had a CYA

18   commitment.  None of these factors were instrumental in

19   correcting your behavior.  With respect to your

20   institutional behavior, I'm going to ask Mr. Martin to

21   cover some factors there.

22        **DEPUTY COMMISSIONER MARTIN:**  Mr. Lewis, the

23   Board wants to commend you once again for your few

24   disciplinary incidents during your institutional career.

25   **VONDELL LEWIS    E-95977    DECISION PAGE 4    5/7/08**

1    I mentioned during the body of the hearing that you had

2    only one 115, and that was disobeying a direct order

3    that had to do with the chow line.  And you only had a

4    couple of 128s.  We appreciate that there's been no

5    episodes of violence.  We want you to keep it that way.

6    That's pretty good institutional behavior that you've

7    exhibited.  I also want to say that the Board commends

8    you on having a solid vocation in welding, and although

9    you don't have a vocational certificate for it, you have

10   what I figure is 12 years in the baking and culinary

11   field.  You've self-reported that you love it.  Those

12   were your words.  And we saw recent very supportive

13   chrono's about your professionalism and your skills in

14   that area, so we commend you for that.  Back to the

15   Chair.

16        **PRESIDING COMMISSIONER ANDERSON:**  Thank you,

17   Mr. Martin.  Moving on to psychiatric factors, your

18   psychiatric report was completed on 3/19/2008 by

19   Dr. Sahni, S-A-H-N-I.  I'm going to read parts of the

20   report into the record that are relevant here, but I

21   want to more point out that Dr. Sahni's report is not

22   totally supportive of release.  Drawing to -- your

23   attention to page number 4, Inmate's Understanding of

24   the Life Crime, "The inmate declined to discuss the life

25   **VONDELL LEWIS   E-95977     DECISION PAGE 5     5/7/08**

1    crime.  Stated that -- this on the advice of his
2    attorney because of an impending appeal."  Again, that's
3    your right.  One of the statements that you mention here
4    is that you didn't kill your friend.  That was a person
5    you grew up with and you were doing bad things, "But I
6    didn't kill him.  Lewis claims he didn't know who shot
7    Curtis Farley.  They were in a bad neighborhood.  The
8    person who testified against him was drugged up and he
9    doesn't know why she blamed him, except that she didn't
10   like him.  He denies having a gun that day.  Lewis
11   claimed fear made him run away because he had been in
12   CYA for manslaughter and he was afraid of getting caught
13   for drugs.  They were all doing illegal drugs, and he
14   didn't want the police to catch him on drugs."  I'm
15   reading from page number 6, Previous Evaluation
16   Summaries:  "Prior psychological evaluations reflect a
17   consistent assessment that the inmate suffers from past
18   substance abuse disorder -- disorders and an anti-social
19   personality, however, of interest is the discrepancy
20   related to the life crime."  Again, the doctor pointed
21   out that: "Mr. Lewis made a statement that it is his
22   belief that he should have been tried for voluntary
23   manslaughter, and that he had poor legal representation
24   with his court case."  I'm going to page number 6
25   **VONDELL LEWIS    E-95977      DECISION PAGE 6      5/7/08**

```
 1    regarding the PCL-R: "His score placed him in the low
 2    range.  The low range suggests that the individual does
 3    not possess traits or patterns that are consistent with
 4    the psychopathic profile."  With respect to page number
 5    7, the HCR-20: "His score placed him in the moderate
 6    range, and this score suggests that the risk for future
 7    violence is significantly influenced by both state
 8    factors rather than trait factors.  State factors would
 9    be economic and environmental influences.  Example of
10    trait factor would be anti-social personality or a
11    tendency towards violating the rights of others.  Within
12    the Management of Future Risk Domain, the inmate's risk
13    is most significant because of the environmental
14    stressors he is likely to experience upon release."
15    Overall Risk Assessment, page number 8: "Based on the
16    findings of the above risk managers and a thorough
17    record review, forensic clinical interview of the
18    inmate, the undersigned's opinion is that this inmate
19    represents a moderate risk for violence.  While the
20    inmate has denied he is guilty of the life crime, if he
21    is lying, this repeated denial suggests an inability to
22    take responsibility for his actions and the pattern of
23    minimizing the seriousness of his anger and impulse
24    control.  As well, the inmate has a well documented
25    VONDELL LEWIS   E-95977    DECISION PAGE 7    5/7/08
```

1     substance abuse history which was, at a minimum, may

2     have been an aggravating factor in the commission of the

3     life crime and, as well, as much of the inmate's past

4     criminal history." With respect to parole plans, we

5     feel that the inmate -- you do have realistic parole

6     plans. You want to live with your father, assist your

7     father because he has had a stroke. You mention that.

8     Your father wrote a letter saying that he would have you

9     in the residence to assist him during this time of need.

10    You also have a letter from transitional housing that

11    indicates that they'd provide support for you. You have

12    two sources of employment, and you do have marketable

13    skills. With respect to Penal Code 3042 responses, the

14    representative of the District Attorney's Office is here

15    and did not support your release from custody at this

16    time. We also looked at all the factors, the attitude

17    towards the crime, signs of remorse, involvement in

18    other misconduct, which was reliably documented, and any

19    relevant information in which taken alone may not

20    formally unsuitability, but when taken together

21    contribute to a pattern which results in unsuitability.

22    Therefore, this Panel will be -- we have denied your

23    parole for two more years. Now with that in mind, I too

24    believe, like the Deputy District Attorney mentioned,

25    **VONDELL LEWIS    E-95977       DECISION PAGE 8       5/7/08**

```
1    that you're on the right path.  Mr. Martin mentioned
2    that too.  You're moving in the right direction.  You
3    know, you recognize some factors that are important that
4    we saw here today.  You did come in and tell us what you
5    believe was your suitability.  However, you know, this
6    Board has the responsibility to look at all the evidence
7    in terms of making a decision, and that's exactly what
8    we did.  You are on the right track, and I want you to
9    continue on that track.  We have some recommendations
10   for you.  Remain disciplinary free.  You have an
11   excellent record in terms of your discipline -- I mean
12   in terms of your incarceration.  That's, you know,
13   commendable.  Continue in your self-help programs.
14   Cooperate with the clinicians in terms of any future
15   evaluations.  And recognize -- you know, you heard me
16   talk about, and Mr. Martin talk about, your insight.
17   That's very critical in terms of when we give dates.  We
18   want to have -- we want you to have the right insight,
19   the right focus in terms of what we feel would be
20   beneficial towards society.  And so that's your
21   underlying determination.  That's one of the factors
22   that we look at in determining suitability for parole.
23   But you did a good job today, and I want you to continue
24   doing that.  So again, it's a two year period of time --
25   VONDELL LEWIS   E-95977      DECISION PAGE 9      5/7/08
```

```
 1    I want to give you a copy of the decision.  Mr. Martin,
 2    do you have any further information -- further comments?
 3              DEPUTY COMMISSIONER MARTIN:  I wish you good
 4    luck, sir.
 5              INMATE LEWIS:  Thank you.
 6              PRESIDING COMMISSIONER ANDERSON:  And I too wish
 7    you good -- the best of luck, sir.  And with that in
 8    mind, it is 10:26 and this hearing is now concluded.
 9                    A D J O U R N M E N T
10                         --oOo--
11
12
13
14
15
16
17
18
19
20
21    PAROLE DENIED TWO YEARS          SEP 0 4 2008
22    THIS DECISION WILL BE FINAL ON:  _____
23    YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT
24    DATE, THE DECISION IS MODIFIED.
25    VONDELL LEWIS   E-95977    DECISION PAGE 10    5/7/08
```

63

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, PAULETTE DODGION, a duly designated transcriber, do hereby declare and certify under penalty of perjury that I have transcribed one audio recording which covers a total of pages numbered 1 - 62, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of VONDELL LEWIS, CDC No. E-95977, on MAY 7, 2008, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned audio recording to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated MAY 21, 2008, at Placer County, California.

_____
Paulette Dodgion, Transcriber
**Foothill Transcription Company, Inc.**

## PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
                   ) SS.
COUNTY OF MONTEREY )

I, Vondell L. Lewis _____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I  am/am not  a party to the within action.

My  business/residence  address is P.O. Box 689, Soledad, California, 93960-0689.

On _____ July 3 _____, 20 _08___, I served the foregoing:

TRAVERSE TO RESPONDENT'S ANSWER TO THE PETITION FOR WRIT OF

HABEAS CORPUS UNDER 2254.

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

```
DEPARTMENT OF JUSTICE
Stacey D. Schesser, State Bar No. 245735
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
```

There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this _3rd_ day of _July_____, 20 _08___, at

Soledad, California.

/S/ _Vondell L. Lewis_____

VONDELL L. LEWIS

(Clerk,
450 Gold
San Fran

Jondell L. Lewis
#E-95977/GW-207
P.O. Box 689
Soledad, CA 93960-0689



Clerk, U.S. Courthouse
450 Golden Gate Avenue
San Francisco, CA
94102-3483

760-0689

LEGAL M

LEGAL MAIL



QUALITY PARK
10 x 15

**LEGAL MAIL**

7-3-08 2/u 2/u % /223 )6 Copies

