IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VONDELL L. LEWIS,  
        Petitioner,  
        v.  
BEN CURRY, Warden  
        Respondent.  
_____/

No. C-07-5976 TEH (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Pro se Petitioner Vondell Lewis, a state prisoner incarcerated at the California Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. section 2254 challenging the California Board of Parole Hearings' ("BPH") May 5, 2006 decision to deny him parole, which, for the reasons that follow, the Court denies.

I

The California Court of Appeal summarized the factual background of the case in an unpublished opinion as follows:

    during the early morning hours of August 30, 1990,

> appellant, Edna Gonzales and Curtis Fairley were consuming cocaine and beer outside a house belonging to "A-Day."  Gonzales, the only eyewitness, stated that she had not slept and had been using cocaine and drinking beer for the previous 24 hours.  She also testified that a "problem" between A-Day and Fairley developed and A-Day ordered Fairley off of the property.  Fairley refused to leave and he and A-Day argued for approximately one hour.  Appellant joined in and also ordered Fairley to leave.  When Fairley, who was "loaded" and crying, still refused to leave, appellant, who was "kind of buzzed," struck him.  Gonzales could not recall whether appellant or Fairley was the man who brandished a knife, but Fairley picked up and threw a bottle at appellant.
>
> Appellant left the area and returned approximately 15 minutes later carrying a sock which apparently contained a gun.  Appellant resumed the argument with Fairley, then suddenly ran inside the house, leaving Fairley outside.  Inside, appellant appeared angry and pointed the gun at the others present and stated that he would shoot Fairley if Fairley continued "messing" with him.  Appellant then went back outside, pointed the gun at Fairley and stated, "I'll put this through your . . . head."  Appellant then fired the gun, fatally wounding Fairley.  The autopsy revealed recent cocaine use by Fairley and concluded death was caused by a single bullet wound.

Doc. #1, Attachment Two.

On May 6, 1991, Petitioner was sentenced to 20 years to life in state prison following his conviction of second degree murder with an attached firearm enhancement.  Doc. #7-3 at 60.  His minimum eligible parole date was September 20, 2003.  Id.

On May 5, 2006, Petitioner appeared before BPH for his second parole suitability hearing and elected to represent himself.  Doc. #7-3 at 60, 61-62; Doc. #7-4 at 42.  At that hearing, BPH found Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety

2

1  if . . . released from prison." Doc. #7-4 at 68.  BPH cited several
2  reasons to support its decision, including:  (1) that the commitment
3  offense "was carried out in an especially cruel and callous manner"
4  and demonstrated "an exceptionally callous disregard for human
5  suffering" in that "the victim was shot in the head while being
6  unarmed;" (2) that Petitioner was convicted of voluntary
7  manslaughter as a juvenile for a crime that also involved the use of
8  a handgun; (3) that Petitioner "failed previous grants of probation
9  and parole and cannot be counted upon to avoid criminality" and
10 "failed to profit from society's previous attempts to correct [his]
11 criminality, including the [California Youth Authority] commitment,
12 adult probation;" (4) Petitioner's history of substance abuse and
13 association with gangs; and (5) an "unfavorable" psychological
14 evaluation.  Doc. #7-4 at 68-72.
15        Petitioner unsuccessfully challenged BPH's decision in the
16 state superior and appellate courts.  Doc. #7-2 at 2-3; Doc. #7-5 at
17 2.  On October 24, 2007, the California Supreme Court summarily
18 denied Petitioner's Petition for Review.  Doc. #7-7 at 2.  This
19 federal Petition for a Writ of Habeas Corpus followed.  Doc. #1.
20        Per order filed on March 26, 2008, the Court found
21 Petitioner's claim that BPH violated his due process rights, when
22 liberally construed, colorable under section 2254, and ordered
23 Respondent to show cause why a writ of habeas corpus should not be
24 granted.  Doc. #4.  Respondent has filed an Answer and Petitioner
25 has filed a Traverse.  Doc. ## 7 & 8.

3

**II**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. section 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." <u>White v. Lambert</u>, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application

**4**

of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. section 2254(d) rests in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  <u>Williams</u>, 529 U.S. at 412; <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir. 2003).

### III

Petitioner seeks federal habeas corpus relief from BPH's May 5, 2006 decision finding him unsuitable for parole and denying him a subsequent parole suitability hearing for one year on the ground that the decision does not comport with due process.

### A

Under California law, prisoners like Petitioner who are serving indeterminate life sentences for noncapital murders, i.e., those murders not punishable by death or life without the possibility of parole, become eligible for parole after serving minimum terms of confinement required by statute.  <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1077-78 (2005).  At that point, California's parole scheme provides that BPH "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration."  Cal. Penal Code § 3041(b).  Regardless of the length of the time served, "a life prisoner shall be found unsuitable for and denied parole if in the

5

judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a).  In making this determination, BPH must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offense, including behavior before, during and after the crime.  See Id. § 2402(b)-(d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole" that cannot be denied without adequate procedural due process protections." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  It matters not that a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334, F.3d 910, 915 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support BPH's decision finding him unsuitable for parole. Sass, 461 F.3d at 1125.  This "some evidence" standard is deferential, but ensures that "the record is not so devoid of evidence that the findings of [the board] were without support or otherwise arbitrary." Superintendent v. Hill, 472 U.S. 445, 457 (1985).  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455.  Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by

the disciplinary board." Id. at 455-56.

Due process also requires that the evidence underlying BPH's decision have some indicium of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant to this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, BPH. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987). If BPH's determination of parole unsuitability is to satisfy due process, there must be some reliable evidence to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

B

Petitioner claims that BPH's finding that he was unsuitable for parole violated his due process rights because BPH knowingly relied on false information contained in hearsay statements to deny him parole and that the superior court's denial of his petition was based upon an unreasonable determination of the facts in light of the evidence presented. Doc. #1 at 5. Put differently, Petitioner is disputing the sufficiency of the permissible evidence of BPH's decision to deny him parole. Implicit in his claim is the contention that BPH's decision was not supported by "some evidence."

As an initial matter, the Court notes that the record shows that BPH afforded Petitioner, who elected to represent himself at the hearing, an opportunity to speak and present his case, afforded him time to review documents relevant to his case and

7

provided him with a reasoned decision in denying parole. Doc. #7-3 at 63-65; Doc. #7-4 at 2-3, 5-6 & 68-76.

The record also shows that BPH relied on several circumstances tending to show unsuitability for parole and that these circumstances formed the basis for its conclusion that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if . . . released from prison." Doc. #7-4 at 68; see Cal. Code Regs. tit. 15, § 2402(a) (stating that a prisoner determined to be an unreasonable risk to society shall be denied parole).

First, regarding the commitment offense, BPH noted:

> the offense was carried out in an especially cruel and callous manner. We have [the victim], 23 at the time, the indications from all the records before the Panel is that he was unarmed, an argument ensued and he was shot in the head. The offense was carried out . . . in a dispassionate and calculated manner. And again, the victim was shot in the head while being unarmed. The offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering, in that essentially, the victim was left on the ground and aid was summoned, but the indication, even from the paramedics that arrived to the police officers, that he would not likely survive his wounds, which he did not.
>
> And the motive from the crime is very inexplicable. The only thing we have on the record is that apparently there was a dispute over drugs and some arguments that unfortunately escalated to the point where [the victim] was shot and killed."

Doc. #7-4 at 68-69; see Cal. Code Regs. tit. 15, § 2402(c)(1)(B) & (D) (listing "dispassionate and calculated manner" and "exceptionally callous disregard for human suffering" as factors

8

tending to show the commitment offense demonstrates an unsuitability for parole).

Second, BPH addressed Petitioner's previous record of violence, noting:

> on a previous occasion, . . . [Petitioner] inflicted serious injury on the victim that ultimately led to the victim's death.  It was in January 1981 . . . [when Petitioner was] a juvenile.  [P]etitioner used a handgun, the victim was killed and [Petitioner was] convicted of voluntary manslaughter resulting in a record of violence or assaultive behavior.

Doc. #7-4 at 70; see Cal. Code Regs. tit. 15, § 2402(c)(2) (listing "previous record of violence" as factor tending to show unsuitability for parole, "particularly if the prisoner demonstrated serious assaultive behavior at an early age").

Third, BPH commented on Petitioner's social history, observing:

> insofar as the history of relationships being unstable . . . those were a product of some of the unfortunate circumstances that were involved in [Petitioner's] formative years when [he] was being raised.  [Petitioner] had failed previous grants of probation and parole and cannot be counted on to avoid criminality.  [Petitioner] failed to profit from society's previous attempts to correct [his] criminality, and those included the CYA commitment, adult probation.

Doc. #7-4 at 70-71 & id. at 26-29 (recounting Petitioner's neglectful and abusive upbringing); see Cal. Code Regs. tit. 15, § 2402(c)(3)  (listing "unstable social history" as factor tending to show unsuitability for parole).  Fourth and somewhat related, BPH acknowledged Petitioner's history of substance abuse and association

9

with gangs.  Doc. #7-4 at 71; see also id. at 28-31 (Petitioner started drinking alcohol at age eight and using drugs at age 14).

   Fifth, BPH noted that Petitioner received an "unfavorable" psychological evaluation in April 2006 that gave him "a higher risk factor than the average citizen in the community for potentially dangerous behavior."  Doc. #7-4 at 72; see also id. at 52-54; Doc. #7-3 at 30-33.

   BPH also considered other factors tending to support suitability for parole including Petitioner's positive institutional behavior and his "limited" misconduct while in prison, and that he possessed a marketable skill and participated in self-help and educational programs while in prison.  Doc. #7-4 at 71-72; see also id. at 42-50.

   The state superior court affirmed the decision of BPH to deny Petitioner parole, finding that the record contained "some evidence" to support BPH's finding that Petitioner was unsuitable for parole.  Doc. #7-2 at 2.  Indeed, in addressing Petitioner's claim challenging BPH's decision, the superior court noted:

>   The Court finds that there is some evidence to support [BPH's] finding that "the offense was carried out in a dispassionate and calculated manner.  [Citation.]  Petitioner shot an unarmed victim during an altercation over drugs.  Prior to the incident, [p]etitioner told the victim ". . . get out of my house, and if you come back, I'll shoot you in the neck. . . ." [Citation.]  Petitioner then shot the victim in the head.
>
> . . . .
>
>   The Court finds that there is some evidence to support [BPH's] finding that the motive was inexplicable in relation to the offense.

> [Citation.]  An inexplicable motive is "one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernible purpose.  [Citation.] In this case, [P]etitioner and the victim were arguing over drugs.  The victim was unarmed.  Petitioner fired one shot at the victim, killing him for no apparent reason.
>
> An inmate may also be unsuitable for parole if the inmate has on "previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age."  [Citation.]  The record reflects that when [P]etitioner was a juvenile, he was convicted of voluntary manslaughter. . . . [P]etitioner shot the victim with a handgun.  Petitioner was convicted of several other offenses that were related to drugs; however, the drug-related offenses did not involve crimes of violence.
>
> An inmate also may be unsuitable for parole if the inmate has a "history of unstable or tumultuous relationships with others." [Citation.]  The record reflects that [P]etitioner stated taking drugs at an early age.  Prior to the commitment offense, [P]etitioner was convicted of several crimes related to drugs.  Petitioner had several failed opportunities of grants of parole or probation.  Petition[er] associated with members of a gang. . . .  Petitioner's early drug use, involvement in criminal activity, lack of amenability to supervision, and gang associations is "some evidence" of an unstable social history.

Doc. #7-2 at 2-3.  The superior court also found, however, that there was:

> *no* evidence to support [BPH's] finding that "the offense was carried out in a dispassionate manner which demonstrates an exceptionally callous disregard for human suffering." [Citation.]  An "exceptionally callous disregard for human suffering" means that "the offense in question must have been committed in a more aggravated or violent [manner] than that

11

>       ordinarily shown in the commission of second
>       degree murder." [Citation.] Petitioner did the
>       minimum to commit his crime, one shot to the
>       victim's head. [Citation.] Petitioner fled the
>       scene of the crime, after checking on the victim
>       and summoning aid.

Doc. #7-2 at 2, emphasis added. The state appellate court summarily denied Petitioner's request for habeas corpus relief, Doc. #7-5 at 2, and the state supreme court summarily denied his Petition for Review. Doc. #7-7 at 2.

On this record, the court finds that the state courts' rejection of Petitioner's due process claim that BPH's decision was not supported by "some evidence" was not contrary to, nor did it involve an unreasonable application of, clearly established federal law, and it was not based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); <u>Williams</u>, 529 U.S. at 409.

The record shows that BPH had some reliable evidence to support its finding of unsuitability. BPH observed that Petitioner as a juvenile had a prior conviction of manslaughter involving the use of a handgun, multiple prior probation and parole failures, a history of substance abuse and association with gangs, and a psychological evaluation that gave him "a higher risk factor than the average citizen in the community for potentially dangerous behavior." Doc. #7-4 at 68-72. Based on these considerations, especially when viewed in conjunction with the nature of the commitment offense, this Court cannot say that BPH's finding that Petitioner was unsuitable for parole was "without support or otherwise arbitrary." See <u>Hill</u>, 472 U.S. at 457.

**12**

Additionally, there is no indication on the record that the allegedly false evidence about which Petitioner complains even factored into BPH's decision.  In fact, when Petitioner addressed the issue during the hearing, one of the BPH panel members interrupted him, stating:

> I'm going to have to stop you.  I let you stray a little while to see if you were framing something that goes towards suitability.
>
> . . . .
>
> . . . The only things we can rely on are the documents that are before us.  Issues that you're bringing up about any drug use by the witnesses, if there's nothing before us, we have nothing to go on.  So, what I'm going to encourage you to do is use your time productively today, because we can't help you with your legal argument.  That's not our job.  We're here to see if you're an okay person who is suitable for parole, so I know you got all this built up in you and you want to tell somebody, I'm just telling you we're not the right people.

Doc. #7-4 at 63.

Based on the record before the Court, BPH reasonably concluded that Petitioner was not yet suitable for parole.  See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and the petitioner's psychiatric reports documenting his failure to complete programming while in prison); Biggs, 334 F.3d at 916 (upholding denial of parole based on gravity of offense and the petitioner's conduct prior to imprisonment); Morales v. California Dep't. of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995) (upholding denial of parole based on the cruel nature of offense, the

petitioner's unstable and criminal history, and his need for further psychiatric treatment).  It is not up to this Court to "reweigh the evidence."  <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th Cir. 1994).

## IV

For the reasons set forth above, the Petition for a Writ of Habeas Corpus is DENIED.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED   07/01/09            /s/ Thelton E. Henderson
                            THELTON E. HENDERSON
                            United States District Judge

G:\PRO-SE\TEH\HC.07\Lewis-07-5976-bph denial.wpd

14